**Mark Lee POLLOCK,
Plaintiff–Appellant,**

v.

**Ronald C. MARSHALL,
Defendant–Appellee.**

No. 87–3346.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 29, 1988.

Decided May 2, 1988.

Rehearing and Rehearing En Banc
Denied June 16, 1988.
Rehearing Denied June 21, 1988.

Mark Lee Pollock, pro se.

Gail O. Finkbeiner, pro bono, Cincinnati, Ohio, for plaintiff-appellant.

Raymond J. Studer, Asst. Atty. Gen., Columbus, Ohio, for defendant-appellee.

Before KENNEDY and RYAN, Circuit Judges, and BROWN, Senior Circuit Judge.

KENNEDY, Circuit Judge.

Plaintiff-appellant Mark Lee Pollock ("plaintiff") appeals from the judgment of the District Court, 656 F.Supp. 957, granting summary judgment to defendant-appellee Ronald C. Marshall ("defendant"), the Superintendent of the Southern Ohio Correctional Facility, in this civil rights action. This case presents the question of whether

a prison may regulate the length of an inmate's hair when the regulation conflicts with the inmate's religious beliefs.

The plaintiff, an inmate at the maximum-security Southern Ohio Correctional Facility, professes a belief in the religion of the Lakota American Indians. The Lakota American Indians believe that hair is sacred and should not be cut. Ohio Administrative Code Regulation 5120–9–25(F) requires inmates to keep the length of their hair within set limits, but provides that the "limitations may be modified by the managing officer upon a showing by the inmate that a sincerely held belief of such inmate, deeply rooted in religion, conflicts with these limits." The defendant refused the plaintiff an exemption from the regulation. The plaintiff, contending that he has a first amendment right to exercise his religion by refusing to cut his hair, sued the defendant pursuant to 42 U.S.C. § 1983, seeking to enjoin prison officials from cutting his hair. Later, after prison officials forcibly cut his hair, he amended his complaint to request money damages.

The defendant filed a motion for summary judgment on the basis that the plaintiff cannot prove that he is a Lakota Indian. He is not one by birth and defendant sought to show he cannot become one by merely professing to be. The District Court denied this motion because there were unresolved material issues of fact. Twenty days after discovery concluded, the defendant filed a second motion for summary judgment on the basis that no constitutional violation occurred because valid penal interests outweighed any first amendment right of the plaintiff to grow his hair long. The District Court granted this motion.

The plaintiff argues that since the discovery deadline had passed prior to the filing of the defendant's second motion, the defendant's failure to raise the successful defense in his first motion precluded him from arguing the defense in his second motion. The plaintiff contends that he was not provided adequate notice as to the defense presented in the second motion.

The defendant argues that he did notify the plaintiff of the defense that cutting the plaintiff's hair was constitutional; in his answer to the plaintiff's complaint he stated that his "First Defense" was that he "has not violated the plaintiff's constitutional rights." As for filing his motion after the discovery deadline, the defendant claims that the plaintiff is referring to the deadline set by the magistrate, which was preempted by the District Court's new discovery deadlines.

The decision whether to allow the defendant to file a second motion for summary judgment, after an alleged discovery deadline had passed, was within the District Court's discretion. A district court has broad discretion over the scope of discovery. *Misco, Inc. v. United States Steel Corp.*, 784 F.2d 198, 206 (6th Cir.1986). The plaintiff could have requested further discovery to respond to the motion, yet he did not. Furthermore, the defendant's answer complied with Fed.R.Civ.P. 8(b), which requires only that a party "state in short and plain terms the party's defenses to each claim asserted," [1] and adequately notified the plaintiff of the defendant's defense.

We turn then to the merits. May the defendant constitutionally require the plaintiff to cut his hair? The District Court properly assumed, for the purpose of summary judgment, that the plaintiff sincerely and genuinely believed in the religion of the Lakota Indians. The District Court then referred to the cases of *Jihaad v. O'Brien*, 645 F.2d 556 (6th Cir.1981), and *Walker v. Mintzes*, 771 F.2d 920 (6th Cir. 1985), for the standard by which to evaluate restrictions on the exercise of prisoners' first amendment rights. It determined that the defendant must prove the necessity of any restrictions it imposes and must demonstrate that the restriction was a reasonable time, place, and manner restriction. *Walker*, 771 F.2d at 929. After reviewing the defendant's affidavit, which set forth

---

1. Rule 8(b) does not apply when a defendant asserts an affirmative defense, but the defendant in this case did not raise an affirmative defense.

several reasons for the hair length restriction, it held that the prison's interest in "enforcement of a neutral, completely objective standard [, one that] obviates the need for ... line drawing among religious practices" outweighed the plaintiff's first amendment interests.

The plaintiff argues that the District Court applied the wrong standard in evaluating his first amendment claim. He contends that the correct standard is that of *Turner v. Safley,* —— U.S. ——, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), decided two months after the District Court issued its opinion in this case.

In *Turner v. Safley* the Court addressed challenges to two prison regulations, one limiting the right of prisoners to correspond with each other, and the other limiting the right of prisoners to marry each other. The Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 2261. The Court justified the standard:

> [S]uch a standard is necessary if "prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations." *Jones v. North Carolina Prisoners' Union,* 433 U.S. [119,] 128 [97 S.Ct. 2532, 2539, 53 L.Ed.2d 629]. Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration. The rule would also distort the decisionmaking process, for every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand.

*Id.* 107 S.Ct. at 2261–62. The Court enumerated four factors relevant to the decision. First, the prison regulation must have a valid and rational connection to the legitimate and neutral government objective put forward to justify it. Second, the court must determine whether there are alternative means of exercising the right that remains open to prison inmates. Third, the court should consider the impact that accommodating the asserted constitutional right will have on the guards and other inmates, and on the allocation of prison resources. The fourth factor is whether there are ready alternatives to the prison regulation. *Id.* at 2262. We will address the regulation at issue here in light of these factors.

The defendant submitted the affidavit of Terry Morris, the present Superintendent of the Southern Ohio Correctional Facility, who testified as to the following reasons for the prison's hair policy:

5. In a prison setting, it is necessary that quick identification of inmates be possible. The growing of hair beyond the established limit hinders the ability to make quick identification.

6. Such identification is necessary to identify inmates involved in violations of rules of the facility in order to ensure discipline. It is also necessary to identify prisoners for activities such as roll call, mail call, commissary purchases and the issuing of visitor room passes.

7. Quick identification is also necessary to facilitate the recapture of inmates who may escape. An escaped inmate could cut his hair, hindering his identification.

8. Hair exceeding the current limit greatly increase[s] the ability of an inmate to hide contraband, such as pills and handcuff keys, in his hair.

9. Increased hair length would result in the need to spend a longer length of time searching an inmate. This would result in more physical contact between guards and inmates. Such additional contact would result in greater tension between the guards and inmates, resulting in an increased chance of fights between them.

10. The increased time needed to search longer hair would also increase the need to assign guards to do this. This would result in less time being spent on other security needs.

11. Homosexuality is a great problem in a prison facility. Longer hair increases the attractiveness of an inmate to other inmates. This increases the likelihood of sexual attacks.

12. Longer hair increases a greater risk of getting caught in machinery and, therefore, creates a safety problem.

13. Longer hair has a greater tendency to clog sinks, showers and similar accomodations [sic] creating a sanitation problem.

14. Longer hair is more conducive to the carrying of lice creating sanitation concerns.

Joint Appendix at 128–30.

We find these interests to be both legitimate and reasonably related to the regulation limiting the length of prisoners' hair. Quick identification, removal of a place to hide small contraband, prevention of sanitation problems and homosexuality, and reduction of contact between prisoners and guards are all legitimate penological interests that are furthered by requiring inmates to keep their hair short. The regulation is facially neutral, allowing the managing officer the discretion to modify the regulation only when the inmate shows a deeply held religious belief that conflicts with the regulation. The plaintiff claims that the reasons are pretextual because the defendant allowed one inmate a religious exemption to the regulation. However, a limited exception to a general rule, allowed under special circumstances, does not prove that the reasons for the rule were fabricated. The plaintiff does not claim he has a liberty interest in the exception, and we find that he does not.

The second question is whether the plaintiff has alternative means of exercising his first amendment right to practice the religion of the Lakota Indians. He has not indicated that the defendant has infringed on this right in any way other than by requiring the plaintiff to comply with the hair length regulation. The plaintiff remains free to exercise the religion's other doctrines.

Third, this Court must consider the impact that allowing the plaintiff to grow his hair long would have on the guards, the other inmates, and location of prison resources. The Superintendent testified that long hair prevents quick identification by the guards and others, is a sanitation and safety risk to the other inmates, increases homosexuality, increases tension between the prisoner and the guards, and reduces the time guards could spend on other security needs. Accommodating the plaintiff's first amendment interest could, it appears, adversely impact the prison environment.

The fourth factor is the availability of ready alternatives to the prison regulation. The Court stated in *Turner* that

[t]his is not a "least restrictive alternative" test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint. But if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.

107 S.Ct. at 2262. The plaintiff argues that allowing the plaintiff an exemption from the regulation would not cause other inmates to demand similar exemptions, and that the plaintiff could keep his hair clean and tied back in a pony tail. He claims that he has overcome the defendant's sanitation and identification concerns. But he fails to address the concern that long hair could prevent quick capture of an escaped prisoner or that it provides a place to hide small contraband. There is little doubt that a person with long hair, even if pulled back in a pony tail, looks quite different from a person with short hair. The plaintiff's alternative also fails to address concerns with homosexuality, increased contact between guards and the plaintiff, and sanitation.

After balancing the defendant's interest in keeping prisoners' hair short against the right of the plaintiff to exercise the religion of the Lakota Indians, we hold that the regulation restricting hair length, as ap-

plied to the plaintiff, is not unconstitutional.

Accordingly, we AFFIRM the judgment of the District Court.