907 F.2d 151
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Dawud A. MUNIR, Plaintiff-Appellant,
v.
Elton I. SCOTT, et al., Defendants-Appellees.
 No. 89-1283.
 United States Court of Appeals, Sixth Circuit.
 July 2, 1990.
 
 Before MILBURN and DAVID A. NELSON, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Dawud Abdullah Munir, an inmate at the Jackson Cotton Correctional Facility at Jackson, Michigan, appeals the summary judgment granted in favor of the defendant prison officials in this action brought under 42 U.S.C. Sec. 1983 alleging violation of his constitutional rights. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 On January 11, 1988, Munir filed a pro se complaint naming as defendants, Elton Scott, warden; David Jamrog, acting deputy warden; and Charles McNamara, resident unit manager; all employees of Michigan's Jackson Cotton Correctional Facility. The complaint alleged that the replacement of non-transparent shower curtains with transparent ones intentionally and deliberately deprived Munir of the ability to observe modesty and thereby violated his constitutional rights under the First, Fourth, Eighth, Ninth, and Fourteenth Amendments. Defendant Scott was never properly served.
 
 
 3
 After answers were filed, the district court referred the matter to a magistrate. Munir filed a motion for summary judgment, and the defendants filed a cross-motion for summary judgment. In a December 12, 1988, report and recommendation, the magistrate recommended summary judgment for the defendants. Over Munir's timely objections, the district court issued an order on January 19, 1989, adopting the magistrate's report and recommendation and granting summary judgment. After a timely notice of appeal to this court, Munir filed a pro se brief; however, this court appointed counsel on October 18, 1989, to represent Munir in this appeal.
 
 B.
 
 4
 The record shows that on November 12, 1987, after learning that the opaque shower curtains in some of the inmate housing units were in poor condition, defendant McNamara ordered new ones to be installed. The old curtains were replaced with transparent ones. As of July 1, 1988, transparent curtains were in use throughout the facility.
 
 
 5
 Almost immediately after the clear curtains were installed, prisoners began to file grievances. On November 13, 1987, inmate Chester Shephard complained that he was being denied the right to practice the "fundamental Christian tenet of modesty." He further stated:
 
 
 6
 The design of the curtains are [sic] clear plastic and like looking through a window. I am forced to shower under conditions that allow anyone to view as I perform a necessary body function. Male and female guards alike, come into the shower area unnounced [sic] making rounds forcing me to endure their stares.
 
 
 7
 J.A. 26.
 
 
 8
 In a grievance dated November 16, 1987, Munir, using the exact wording of Shephard's grievance, complained that he was being denied the right to "observe the Fundamental Muslim tenet of Modesty." J.A. 28. A form signed by Munir and defendant McNamara stated that the grievance was "being resolved." In an answer to Munir's interrogatories, McNamara said that in response to the grievance he told Munir he would "try to get the shower curtain problem resolved by trying to order curtains with a print or flowers on them." J.A. 56-57. Other inmates filed nearly identical grievances.
 
 
 9
 Through an affidavit, Munir told of two incidents when he tried to shield himself from view by hanging a bath towel over the shower curtain but was ordered by an officer to remove the towel. On one occasion the officer was male, and on the other occasion the officer was female. On both occasions the officers, after giving the order to remove the towel, "remained in the door way of the bathroom." J.A. 73.
 
 
 10
 The record also contains the affidavit of inmate Jerome Shaffer stating that "female officers would go into the bathroom and look at inmates while showering; and ... third [shift female] officers would place a chair or stand in front of the bathroom and view inmates using the bath room." J.A. 75.
 
 
 11
 In an affidavit, defendant Jamrog asserted that the transparent curtains were "used for the safety of both prisoners and staff." J.A. 39. In his answer to interrogatories, Jamrog explained that he ordered the clear shower curtains because they "were the only suitable curtains available at the time." J.A. 62.
 
 
 12
 The record also contains the affidavit of Allen Haigh, acting warden at the facility. Haigh stated:
 
 
 13
 The institution has attempted to secure a shower curtain that was clear and could be seen through but had a color bar that would correspond to a person's mid-section of their body. This would serve as a modesty panel concept. We have been unable to secure a shower curtain that can be seen through but covers the mid-section body area. For the safety of the prisoners and security it is a necessary requirement that we are able to see into the showers. When a suitable shower curtain can be obtained that provides the necessary vision as well as a level of privacy we will secure it.
 
 
 14
 J.A. 45-46.
 
 
 15
 The complaint centers on the lack of privacy while showering, and there is no indication Munir had any difficulty observing modesty in traveling to and from the shower stall. In their cross-motion for summary judgment, the defendants pointed out that Munir was not prohibited from covering himself with an extra towel or some type abbreviated clothing (swim trunks, etc.). A "policy directive" was submitted into evidence to show that an inmate had access to such clothing.
 
 
 16
 The issue presented in this appeal is whether there was a genuine issue of material fact that the use of transparent shower curtains was reasonably related to a legitimate penological interest.II.
 
 A.
 
 17
 Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In our review, we view all facts and inferences drawn therefrom in the light most favorable to the nonmoving party. 60 Ivy Street Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir.1987). We review a district court's grant of summary judgment de novo. Pinney Dock and Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.). cert. denied, 109 S.Ct. 196 (1988).
 
 
 18
 The finding of the ultimate fact that the prison regulation was reasonable, "based upon the application of legal principles to subsidiary facts is also subject to de novo review upon appeal." Whitney v. Brown, 882 F.2d 1068, 1071 (6th Cir.1989).
 
 B.
 
 19
 We begin our analysis by identifying the undisputed matters. It is undisputed that Munir is a Sunni Muslim, and that a fundamental tenet of his religion is the practice of modesty. It is also undisputed that the shower curtains in use were transparent, thus allowing a person in the shower to be seen by other inmates and by male and female guards. It is undisputed that safety and security considerations made it necessary for the guards to be able to see into the shower stalls. It is also undisputed that the prison authorities unsuccessfully attempted to obtain transparent shower curtains with a modesty panel.
 
 
 20
 The magistrate's analysis, which the district court endorsed, was short and to the point:
 
 
 21
 In the case of O'Lone v. Shabazz, the United States Supreme Court in June, 1987 stated that prison regulations alleged that [sic] to infringe constitutional rights are to be judged under a reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental rights. The regulation is to be held valid if it is reasonably related to legitimate penological interests. It is error for a court to establish a separate burden on prison officials to prove that no reasonable method exists by which an inmate's religious rights can be accommodated without creating bona fide security problems. Based on that standard, and considering the evidence referred to above, I conclude that defendants are entitled to a grant of summary judgment.
 
 
 22
 At the outset, we note that prison inmates do not lose their constitutional rights by virtue of incarceration. Whitney, 882 F.2d at 1072. However, the realities of prison life may require some restriction on the exercise of those rights. Id. Thus, in Kent v. Johnson, 821 F.2d 1220 (6th Cir.1987), we found allegations of retaliatory surveillance of a male inmate's shower activities by female guards sufficient to state a claim of violation of the inmate's constitutional rights, including freedom of religion, privacy, and freedom from cruel and unusual punishment. Id. at 1224-28. However, we recognized in Kent that further development of the factual issues might justify a summary disposition. Id. at 1230.
 
 
 23
 Unlike Kent, this case involves a summary disposition. Our analysis is guided by Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254 (1987), and O'Lone v. Estate of Shabazz, 482 U.S. 342, 107 S.Ct. 2400 (1987). In Turner, the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Id. at 2261.
 
 
 24
 The Court went on to identify four factors relevant to determining the reasonableness of a regulation at issue.
 
 
 25
 First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forth to justify it....
 
 
 26
 A second factor relevant in determining the reasonableness of a prison restriction ... is whether there are alternative means of exercising the right that remain open to prison inmates....
 
 
 27
 A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally....
 
 
 28
 Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation.
 
 
 29
 Id. at 2262 (citations omitted).
 
 
 30
 In O'Lone, the Court upheld policies adopted by prison officials which resulted in the inability of Muslim inmates to attend Jumu'ah, a weekly Muslim congregational service regularly held in the main prison building. O'Lone, 107 S.Ct. at 2402. The Court held that the Third Circuit was "wrong when it established a separate burden on prison officials to prove 'that no reasonable method exists by which [prisoners'] religious rights can be accommodated without creating bona fide security problems.' " Id. at 2405. "By placing the burden on prison officials to disprove the availability of alternatives, the ... Court of Appeals [failed] to reflect the respect and deference that the United States Constitution allows for the judgment of prison administrators." Id.
 
 
 31
 This circuit has applied the four factors identified in Turner as "guidelines to be weighed in the evaluation of a regulation" rather than as four prongs of a test, each of which must be met. Whitney, 882 F.2d at 1076; see Pollock v. Marshall, 845 F.2d 656, 659 (6th Cir.), cert. denied, 109 S.Ct. 239 (1988). Thus, in Whitney, because the factors weighed heavily against a policy of prohibiting Jewish inmates' intercomplex travel to weekly Sabbath services and an annual Passover service, we invalidated the policy. However, in Pollock, we upheld a prison regulation on hair length despite the infringement upon an inmate's sincerely held religious belief, as a Lakota American Indian, that hair is sacred and should not be cut. 845 F.2d at 657.
 
 
 32
 Pollock is especially instructive in this case because, like this case, it came to us on a summary judgment. Also, as in this case, the factual development was scant. In Pollock, we upheld the prison regulation on the basis of one affidavit by the prison superintendent asserting the following reasons for limiting the length of prisoner's hair: "Quick identification, removal of a place to hide small contraband, prevention of sanitation problems and homosexuality, and reduction of contact between prisoners and guards...." 845 F.2d at 659.
 
 
 33
 Another similarity between Pollock and this case is failure of the lower court in both cases to make specific factual findings regarding the four factors. See id. at 658. In Pollock, we conducted our own review of the four factors and upheld the regulation.
 
 
 34
 Turning to the case before us, we must assume, as the district court did, that Munir's constitutional rights were infringed upon. Thus, the relevant issue becomes whether the district court erred in finding as a matter of law that the use of transparent shower curtains was reasonably related to legitimate penological interests. According to the affidavit of the acting warden, transparent curtains were necessary because of concerns for security and safety of the prisoners. Prisoner safety and security are legitimate penological interests. See Turner, 107 S.Ct. at 2263; Whitney, 882 F.2d at 1073. It is not irrational to conclude that security and prisoner safety could be compromised by the use of non-transparent shower curtains.
 
 
 35
 Munir, through his counsel, argues that "[t]he validity of the regulation and the logical connection between the regulation and the asserted goal is refuted by statements in the affidavits of the Defendants themselves." Appellant's Brief at 10. Specifically, Munir argues that "if the prison officials are attempting to obtain curtains with modesty panels or prints there is no justification for maintaining transparent shower curtains." Id. at 11. However, Munir's argument conveniently overlooks the fact the affidavits submitted by the defendants also stated that no suitable alternative curtains could be located[1].
 
 
 36
 Concerning alternative means open to Munir to exercise the rights he asserts, the defendants pointed out in their cross-motion for summary judgment that Munir failed to plead or present facts showing that he was prevented from shielding his genitals or buttocks from the view of others while using the showers. The defendants suggested that Munir could cover himself with an extra towel or some type of abbreviated clothing. Munir's only response was that he was not permitted to shield his shower stall by hanging a towel over the shower curtain rod. Yet specifically in light of the defendant's security concerns, the difference between a towel hung over a shower stall door and a towel (or shorts) worm by a bather is obvious. We conclude that Munir failed to respond to the defendants' showing of the existence of alternative means by which he could exercise the rights he asserts. Of course, it is well-established that a party may prevail upon a summary judgment motion based upon a showing of a nonmovant's lack of proof. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir.1989).
 
 
 37
 From the record it does not appear that any evidence was offered concerning the third factor, the impact that accommodation of the right would have on other inmates or prison resources. However, the Supreme Court has recognized that "few changes will have no ramifications on the liberty of others or on the use of [a] prison's limited resources...." Turner, 107 S.Ct. at 2262.
 
 
 38
 The only evidence we find regarding the fourth factor, the presence or absence of ready alternatives, concerns the attempt to obtain curtains with modesty panels installed. We note that Turner suggests that the burden of pointing to ready alternatives is on the inmate. 107 S.Ct. at 2262. Thus, Munir cannot hope that the trier of fact will disbelieve the assertions of prison authorities that suitable curtains with a modesty panel were not available; he must come forward with "affirmative evidence in order to defeat a properly supported motion for summary judgment." Street, 886 F.2d at 1479. "This is true even where the evidence is likely to be within the possession of the defendant...." Id. at 1477.
 
 
 39
 We agree with the district court that there was no genuine issue of material fact that the use of transparent shower curtains was reasonably related to legitimate penological interests. To do otherwise in this case would be to place a "separate burden on prison officials to prove that no reasonable method exists by which [Munir's] ... rights can be accommodated without creating bona fide security problems.' " O'Lone, 107 S.Ct. at 2405.
 
 III.
 
 40
 Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 According to Munir's pro se brief at 3, the institution has begun trying to insert modesty shields into existing curtains at its mattress factory