**C.D. MOSIER, Plaintiff–Appellant,**

v.

**Gary MAYNARD, D.O.C.; Dan Reynolds, Warden, Defendants–Appellees.**

No. 90–6199.

United States Court of Appeals,
Tenth Circuit.

July 5, 1991.

---

Submitted on the briefs: *

C.D. Mosier, pro se.

Robert H. Henry, Atty. Gen. and Gay Abston Tudor, Asst. Atty. Gen., State of Okl., Oklahoma City, Okl. for defendants-appellees.

Before LOGAN, MOORE and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

Plaintiff-appellant C.D. Mosier appeals from the grant of summary judgment to defendants-appellees in this civil rights action against Oklahoma prison officials. Mosier's complaint alleged that prison officials violated his first and fourteenth amendment rights to free exercise of religion and equal protection of the law by denying him an exemption to the prison grooming code. The district court ordered a special report pursuant to *Martinez v. Aaron,* 570 F.2d 317 (10th Cir.1978). Defendants filed a motion to dismiss which the district court converted to a motion for summary judgment under Fed.R.Civ.P. 56. Mosier filed a response, whereupon the district court granted summary judgment in favor of the defendants. We reverse and remand.

## I.

In April 1986, the Oklahoma Department of Corrections granted plaintiff an exception to the grooming standards, based upon documentation concerning defendant's Native American heritage and his belief in the Native American religion. I R. doc. 1, app. 5.[1] Plaintiff was not required to cut his hair provided that he kept it neat and clean, and pulled back in a pony tail, braided or constrained in a cap anytime he was outside of his cell. *Id.* Subsequently, the plaintiff was transferred to another Oklahoma institution and was told to seek a new exemption under a new policy. Under the new policy, an inmate may apply for and receive an exemption if he can establish that: (1) the religion is recognized; (2) he is an adherent to the religion; (3) the practice of his religion is inhibited by a particular provision in the grooming code; and (4) the facility's interest in security does not outweigh his need to practice the religion. I R. doc. 11, attach. H at 5. According to the policy, the exclusive means for establishing adherence to the religion is by:

> Providing names, addresses, and telephone numbers of reputable non-family members who are not under the custody of the Oklahoma Department of Corrections, that can establish adherence to the religion or can provide documented evi-

---

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause therefore is ordered submitted without oral argument.

1. The 1986 letter to plaintiff granting him an exception provided in part:

> Based upon the documentation you provided concerning your Indian heritage and your belief in the Native American Religion, the committee did vote to authorize an exception [to the prison grooming standards] in your case.

I R. doc. 1, app. 5.

dence to establish adherence to the religion.

I R. doc. 17 at 2–3. *See also* I R. doc. 11, attach H at 1; Appellees' Brief at 3–4. Plaintiff's application was referred to the prison chaplain for investigation. The chaplain recommended denial of the application on the grounds that plaintiff had not produced adequate external evidence that he was practicing his native religion.

The chaplain acknowledged that plaintiff was one-quarter degree Native American. Also supporting plaintiff's application was the letter granting him the prior exemption, a statement from the Principal Chief of the Cherokee Nation concerning the importance of religious freedom and a personal statement of faith in which plaintiff indicated that according to Cherokee belief, the body is an extension of the Great Spirit and must not be mutilated or defaced. Plaintiff expressed his belief that his hair was integral to his body, similar to a hand or a leg, and that to cut it would be cut himself off from God.

The chaplain found that the Native American religion was recognized, but determined that a lack of external evidence existed concerning whether plaintiff actually practiced his beliefs. The chaplain distinguished the prior exemption policy under which plaintiff prevailed as one which relied primarily on Native American status rather than on practice of belief. Other factors cited by the chaplain to support his conclusion included: (1) plaintiff was not a member of the Cherokee nation; (2) plaintiff did not participate in the Native American religious group at the prison; and (3) plaintiff did not submit documentation from tribal sources or nonrelated family members attesting to the sincerity of his belief.

Merely because plaintiff is not a member of the Cherokee nation or the Native American worship group at the prison does not mean that his belief is insincere. The Supreme Court has rejected the notion that membership in a religious organization is a prerequisite for religious convictions to be judged sincere. *Frazee v. Department of Employment Sec.*, 489 U.S. 829, 834, 109 S.Ct. 1514, 1517–18, 103 L.Ed.2d 914 (1989) (plaintiff was a Christian, but not a member of a particular Christian sect). Likewise, while practice or nonpractice of a particular tenet of a religion may be relevant to sincerity, it is not conclusive. *Reed v. Faulkner*, 842 F.2d 960, 963 (7th Cir. 1988). Intrafaith differences are common and cannot be resolved by secular courts. *Thomas v. Review Bd.*, 450 U.S. 707, 715–16, 101 S.Ct. 1425, 1430–31, 67 L.Ed.2d 624 (1981). Likewise, we have recognized that a religious objection may arise from a "specific [religious] belief, whether as part of a personal faith or as a tenet of an organized group or sect." *Dunn v. White*, 880 F.2d 1188, 1197–98 (10th Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 871, 107 L.Ed.2d 954 (1990). *See also Frazee*, 489 U.S. at 833, 109 S.Ct. at 1517 (no requirement that claimant belong to a particular sect prohibiting practice at issue).

In recommending denial of plaintiff's application for an exemption, the chaplain wrote:

> All supporting evidence does not specifically testify that Mosier actually practices his beliefs. *What he believes very well could be true* but there is no external evidence that he has been practicing his native traditional beliefs.

I R. doc. 11, attach. C. at 2 (emphasis supplied). The Facility Classification Committee reviewed the matter and denied the application *solely* on the ground of insufficient evidence "that the inmate is a sincere adherent of the religion." I R. doc. 11, attach. E at 1. The Committee particularized its denial, pointing out that plaintiff did not submit external documentation concerning his sincere belief from reputable, nonfamily members who were not under the jurisdiction of the Oklahoma Department of Corrections. *Id.* Plaintiff appealed to the warden. The warden replied that "[a]lthough I respect your right to *your religious belief,* it does not exempt you from the inmate grooming code." I R. doc. 11, attach. F at 2 (emphasis supplied). The warden then affirmed the Committee's decision on similar grounds, pointing to a lack of documentation concerning sincere

adherence from a reputable nonfamily member who was not incarcerated under the jurisdiction of the department. *Id.* A deputy director of institutions then affirmed the denial.

## II.

The district court determined that plaintiff did not qualify for an exemption because he "failed to provide the names[,] addresses and telephone numbers of nonfamily members that could establish his adherence to the religion or provide documented evidence to establish his adherence to the religion." I R. doc. 17 at 3. The district court also determined that the grooming regulation was valid based on a statement contained in the defendants' motion to dismiss to the effect that the regulation "was 'established to promote an overall sense of pride and discipline and ensure the safety, health, and welfare of inmates.'" *Id.* at 4 (quoting I R. doc. 11 at 2). The district court relied on *Pollock v. Marshall*, 845 F.2d 656 (6th Cir.), *cert. denied*, 488 U.S. 987, 109 S.Ct. 239, 102 L.Ed.2d 228 (1988), which held that a prison could enforce a blanket restriction on hair length even if it conflicted with sincere Native American religious beliefs. *Id.* at 657, 659–60.

In the context of a Fed.R.Civ.P. 12(b)(6) dismissal in which the prison's justification was not challenged, we recently upheld a policy at a temporary detention facility requiring that all new inmates receive haircuts without opportunity for religious exemptions. *Hall v. Bellmon*, 935 F.2d 1106, 1114 (10th Cir.1991). The justification for the policy was that "it prevents inmates from hiding weapons in long hair and from easily changing their appearance should they escape, and it facilitates good hygiene." *Id.* *See also Iron Eyes v. Henry*, 907 F.2d 810, 814 (8th Cir.1990) (upholding hair length policy on similar grounds).

This case differs from *Hall* and *Pollock* in several important respects. First, the facility in this case is not a temporary detention facility. Second, plaintiff is not challenging that part of the grooming code concerning hair length, but rather the exemption policy *established by the prison* and its application. *See Iron Eyes*, 907 F.2d at 811 n. 3, 816 (recognizing that exemption policy could be challenged, even if hair length policy upheld). Third, *Hall* involved upholding the hair cutting requirement on Fed.R.Civ.P. 12(b)(6) grounds; this case, like *Pollock*, involves summary judgment under Fed.R.Civ.P. 56. Unlike *Pollock*, however, the defendants in this case have not produced any affidavits in support of their claimed justification for the grooming code.

Based on the items in the record, we review the district court's grant of summary judgment *de novo* to determine whether "the pleadings ... and admissions, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Genuine disputes about material factual issues preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). We view the summary judgment evidence and its inferences in the light most favorable to the plaintiff, the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). However, affidavits or other evidence offered by the party opposing the motion must create a genuine issue for trial; summary judgment will not lie if the opponent's evidence is "merely colorable" or anything short of "significantly probative" on a material issue. *Anderson*, 477 U.S. at 241–42, 106 S.Ct. at 2504–05. We recently held that a *Martinez* report may be treated as an affidavit, "but the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall*, 935 F.2d at 1111–1112. Here, the plaintiff's complaint concerning his religious beliefs also may be treated as an affidavit because it is based on personal knowledge and has been sworn under penalty of perjury; therefore, it meets the requirements of Fed.R.Civ.P. 56(e). *Hall*, 935 F.2d at 1111;

*McElyea v. Babbitt,* 833 F.2d 196, 197–98 (9th Cir.1987). Factual statements contained in defendants' brief attributable to counsel, however, do not constitute summary judgment evidence; thus, given plaintiff's response, the district court could not grant summary judgment concerning the grooming code in sole reliance upon such statements. *See* 10A A. Miller, C. Wright & M. Kane, *Federal Practice & Procedure* § 2723 at 64 (1983); 6 J. Moore, W. Taggart, J. Wicker, *Moore's Federal Practice* ¶ 56.11[1.—8] (1991). *See also Swift v. Lewis,* 901 F.2d 730, 731–32 (9th Cir.1990) (summary judgment could not be granted on reasonableness of prison grooming code where prison officials failed to produce any evidence to accompany asserted justification).[2]

### III.

■ Under the free exercise clause of the first amendment, an inmate must be accorded a reasonable opportunity to pursue his religion. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081–82, 31 L.Ed.2d 263 (1972). However, what constitutes a reasonable opportunity must be evaluated with reference to legitimate penological objectives of the prison; consequently, the reasonableness inquiry is less restrictive than what ordinarily might apply. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349, 107 S.Ct. 2400, 2405–05, 96 L.Ed.2d 282 (1987). What might be viewed as an unreasonable infringement of a fundamental constitutional right were it to occur outside of prison may be valid in prison as long as the infringement is reasonably related to legitimate penological objectives, which include rehabilitation, deterrence and security. *Id.* at 348–49. Given a prison's need to constrain antisocial and potentially violent conduct, the latter objective frequently is de-

terminative of accommodation issues. *See Washington v. Harper,* 494 U.S. 210, 110 S.Ct. 1028, 1038, 108 L.Ed.2d 178 (1990).

■ Several factors inform the reasonableness inquiry: (1) whether a valid and rational connection exists between the policy and a legitimate governmental interest advanced as justification; (2) whether, notwithstanding the policy, alternative means exist for the prisoner to exercise the right; (3) what effect an accommodation would have on guards, inmates and prison resources; and (4) whether an alternative is available which would accommodate the prisoner's rights at a *de minimis* cost to valid penological interests. *Turner v. Safley,* 482 U.S. 78, 89–91, 107 S.Ct. 2254, 2261–63, 96 L.Ed.2d 64 (1987); *Hall,* 935 F.2d at 1113; *Clifton v. Craig,* 924 F.2d 182, 184 (10th Cir.1991); *Frazier v. Dubois,* 922 F.2d 560, 562 (10th Cir.1990). Once the material facts have been established, by admission, stipulation, or trial, our review of a reasonableness inquiry is *de novo.* *Hall,* 935 F.2d at 1113; *Iron Eyes,* 907 F.2d at 813. *See also Friedman v. Arizona,* 912 F.2d 328, 331 (9th Cir.1990) (reasonableness inquiry is a mixed question of law and fact reviewed *de novo*), *cert. denied,* —— U.S. ——, 111 S.Ct. 996, 112 L.Ed.2d 1079 (1991).

■ At this stage of the proceedings, the dispute concerns plaintiff's failure to prove the sincerity of his religious beliefs to the satisfaction of prison officials. Plaintiff contends that the district court improperly granted summary judgment because a genuine issue of material fact exists concerning his sincerity. He further contends that the prison's absolute requirement of external documentation concerning sincere belief from reputable, nonfamily members (not under the jurisdiction of the Oklahoma De-

---

**2.** Like the *Swift* court we recognize that prisoners have been singularly unsuccessful under *Turner* in challenging grooming codes, as well as dress and personal property codes, *see, e.g., Hall,* 935 F.2d at 1112–1114 (religious items worn around neck and hair length); *Friend v. Kolodzieczak,* 923 F.2d 126, 128 (1991) (religious items); *Friedman v. Arizona,* 912 F.2d 328, 331–33 (9th Cir.1990) (facial hair), *cert. denied,* —— U.S. ——, 111 S.Ct. 996, 112 L.Ed.2d 1079

(1991); *Iron Eyes,* 907 F.2d at 813–16 (hair length); *Solomon v. Zant,* 888 F.2d 1579, 1581–82 (11th Cir.1989) (facial hair); *Fromer v. Scully,* 874 F.2d 69, 73–76 (2d Cir.1989) (beard length); *Pollock,* 845 F.2d at 658–60 (hair length); *Deer v. Carlson,* 831 F.2d 1525, 1527–29 (9th Cir.1987) (dress regulations), but this does not obviate the need for facts upon which to base a reasonableness determination. *Swift,* 901 F.2d at 731.

partment of Corrections) cannot be applied to bar an exemption on sincerity grounds when other uncontroverted evidence demonstrating sincerity exists. Plaintiff has declined to identify other persons to vouch for the sincerity of his beliefs, contending that (1) the letter granting his prior exemption was based upon his Native American heritage *and* religious beliefs, both of which have not changed, and (2) to provide this form of substantiation would intrude upon his personal relationship with God and require him to answer to others for his religious beliefs. I R. doc. 1, app. 4, attach. A. Plaintiff has, however, submitted four other forms of proof to establish his sincerity.

"A way of life, however virtuous and admirable, may not be interposed as a barrier to reasonable state regulation ..., if it is based upon purely secular considerations; to have the protection of the Religion Clauses, the claims must be rooted in religious belief." *Wisconsin v. Yoder*, 406 U.S. 205, 215, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972). *Accord Thomas*, 450 U.S. at 713, 101 S.Ct. at 1429–30. However, determining what constitutes "a 'religious' belief or practice is more often than not a difficult and delicate task." *Thomas*, 450 U.S. at 714, 101 S.Ct. at 1430.

> Nor do we underestimate the difficulty of distinguishing between religious and secular convictions and in determining whether a professed belief is truly held. States are clearly entitled to assure themselves that there is an ample predicate for invoking the Free Exercise Clause.

*Frazee*, 489 U.S. at 833, 109 S.Ct. at 1517. Without question, the prison may determine whether plaintiff's beliefs are sincere, meaning whether they are "truly held and religious in nature." *Martinelli v. Dugger*, 817 F.2d 1499, 1504 (11th Cir.1987), *cert. denied*, 484 U.S. 1012, 108 S.Ct. 714,

98 L.Ed.2d 664 (1988). Some asserted religious claims may be "so bizarre, so clearly nonreligious in motivation, as not to be entitled to protection under the Free Exercise Clause." [3] *Thomas*, 450 U.S. at 715, 101 S.Ct. at 1431. But apart from that narrow category, courts carefully avoid inquiring into the merits of particular religious beliefs in an effort to gauge sincerity. *See, e.g., United States v. Lee*, 455 U.S. 252, 257, 102 S.Ct. 1051, 1055, 71 L.Ed.2d 127 (1982); *Thomas*, 450 U.S. at 714–15, 101 S.Ct. at 1430–31; *United States v. Ballard*, 322 U.S. 78, 86–87, 64 S.Ct. 882, 886–87, 88 L.Ed. 1148 (1944). Scrutiny of the validity of particular beliefs largely is beyond our judicial function because "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Thomas*, 450 U.S. at 714, 101 S.Ct. at 1430. *But see McCorkle v. Johnson*, 881 F.2d 993, 995–96 (11th Cir. 1989) (ban on satanic worship justified because practices and *beliefs* posed security threats and were contrary to prison objectives).

■ In this case, we are concerned with the sincerity with which an admittedly religious belief is held. *See Callahan v. Woods*, 658 F.2d 679, 683–84 (9th Cir.1981). A religious belief which is not sincerely held or a belief which is purely secular does not require the prison to consider accommodation. *See, e.g., Johnson v. Moore*, 926 F.2d 921, 923 (9th Cir.1991) (professed vegitarianism not rooted in religious belief); *McElyea*, 833 F.2d at 198 (prison suggested that religious belief concerning kosher food was not sincerely held if prisoner did not partake of kosher diet at previous facility).

■ Whether religious beliefs are sincerely held is a question of fact. *See United States v. Seeger*, 380 U.S. 163, 185, 85 S.Ct. 850, 863–64, 13 L.Ed.2d 733 (sincerity of religious beliefs for conscientious objec-

---

**3.** The plaintiff's desire not to cut his hair so as to conform with his Native American religious beliefs can hardly be deemed bizarre or incredible. *See Iron Eyes*, 907 F.2d at 810, 813 (Sioux plaintiff's need to wear long hair was religious and sincerely held); *Teterud v. Burns*, 522 F.2d 357, 359–60 (8th Cir.1975) (practice of wearing long-braided hair was rooted in Native American religious belief). *See also Weaver v. Jago*, 675 F.2d 116, 117–18 (6th Cir.1982) (Cherokee plaintiff's belief that cutting hair would contravene his religion would be entitled to first amendment protection if belief was one of deep religious conviction).

tor status); *LeFevers v. Saffle*, 936 F.2d 1117, 1119 (1991); *Iron Eyes*, 907 F.2d at 810; *Martinelli*, 817 F.2d at 1504. Just as the grooming code would be evaluated under the *Turner* standards, so too is the exemption policy. *See Kahey v. Jones*, 836 F.2d 948, 950 (5th Cir.1988) (accommodation policy for kosher diet evaluated under *Turner*). The prison's policy of denying the sincerity of a prisoner's religious beliefs unless he submits reputable nonfamily references vouching for sincerity represents a very limited approach to this question of fact. The policy prefers one type of corroborative evidence to the exclusion of all other types of evidence, both direct and indirect. While there may be a logical connection between the policy and the likely goal of insuring that exemptions reflect sincere beliefs, it is not clear if the policy accommodates personal nature of belief and the primacy of personal statements and conduct when one seeks an exemption. *See Hobbie v. Unemployment Appeals Comm'n*, 480 U.S. 136, 144, 144 n. 9, 107 S.Ct. 1046, 1050 n. 9, 94 L.Ed.2d 190 (1987) (relevant inquiry is whether faith is religiously based at time of assertion); *McElyea*, 833 F.2d at 198–99 (prison chaplain's reliance on secondhand information concerning prisoner's past religious behavior was "not a reasonable method of determining religious commitment"). *See also Frazee*, 489 U.S. at 830, 833, 833 n. 1, 109 S.Ct. at 1515–16, 1517, 833–34 n. 1; *Thomas*, 450 U.S. at 713–14, 101 S.Ct. at 1429–30; *Seeger*, 380 U.S. at 184, 85 S.Ct. at 863; *Teterud*, 522 F.2d at 360–61. We question whether the alternative suggested by plaintiff, consideration of his sincerity evidence without the outside references, could accommodate him at *de minimis* cost to the penological objectives of the prison. Of course, the reasonableness of a regulation is not subject to a higher standard of scrutiny because an alternative exists, but "the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable." *Turner*, 482 U.S. at 90, 107

S.Ct. at 2262; *Salaam v. Lockhart*, 856 F.2d 1120, 1123 (8th Cir.1988).

In short, we think that plaintiff has raised a genuine issue of material fact about the reasonableness of the exemption policy and its application. This must be resolved by the district court after sufficient factual development and application of the *Turner* factors. *See Frazier*, 922 F.2d at 562 (case remanded for *Turner* analysis); *Ali v. Dixon*, 912 F.2d 86, 91 (4th Cir.1990) (case remanded for further factual development on burden associated with adding prisoner's new name to prison's written records); *Swift*, 901 F.2d at 733 (case remanded for additional factual and legal development concerning grooming policy). Summary judgment was not proper. This is not a case in which the plaintiff merely rested upon an allegation of sincere religious belief. *Cf. Dunn*, 880 F.2d at 1198. Rather, the plaintiff came forward with significantly probative evidence concerning the validity of the regulation and his sincerity. On the latter issue the plaintiff included a prior determination by the corrections department that his beliefs were sincere enough for him to be granted an exemption in 1986, *see Whitney v. Brown*, 882 F.2d 1068, 1076 (6th Cir. 1989) (deviation from accommodation of longstanding practice based on security concerns may be pretextual), and a statement explaining his personal beliefs. Moreover, during this controversy, prison officials have acknowledged his "religious belief" and that "[w]hat he believes very well could be true." *See supra* p. 1523. Given this evidence, we remand the case to the district court for proceedings consistent with this opinion.[4]

REVERSED and REMANDED.

---

**4.** In light of our remand, the district court should consider defendant's equal protection argument concerning selective application of the sincerity test to Native Americans. *See Lafevers*, 936 F.2d at 1120 (case reversed on first amendment grounds remanded for reconsideration of equal protection claim). *See generally Al–Alamin v. Gramley*, 926 F.2d 680, 688 (7th Cir.1991); *Allen v. Toombs*, 827 F.2d 563, 568–69 (9th Cir.1987). We express no opinion on that claim.