Christopher A. ESTEP, et al., Plaintiffs,

v.

James DENT, et al., Defendants.

Ronald Timothy PHIPPS, Plaintiff,

v.

Philip PARKER, et al., Defendants.

Troy BERRY, Plaintiff,

v.

Phil PARKER, et al., Defendants.

Charles Douglas INGRAM, Sr., a/k/a
Muhammad Thabit Rashad, et
al., Plaintiffs,

v.

Gregg W. ANDERSON, et al., Defendants.

Cholly B. JOHNSON, Plaintiff,

v.

Glenn HAEBERLIN, et al., Defendants.

Tony HARRIS–BEY, Plaintiff,

v.

Philip PARKER, et al., Defendants.

Civil A. Nos. 3:93CV–611–J, 3:94CV–149–J,
5:94CV–195–J, 5:94CV–230–J, 5:94CV–
256–J and 5:95CV–116–J.

United States District Court,
W.D. Kentucky,
Louisville Division.

Jan. 19, 1996.

David A. Friedman, Taustine, Post, Sotsky, Berman, Fineman & Kohn, Louisville, KY, for Christopher A. Estep, Frank E. Cottrell, III, Adam Bash, Abdul Albari, Ronald Timothy Phipps, Troy Berry, Charles Douglas Ingram, Sr., Tony Harris–Bey, Jesse Moore, Cholly B. Johnson.

Christopher A. Estep, West Liberty, KY, pro se.

Frank E. Cottrell, III, LaGrange, KY, pro se.

Adam Bash, LaGrange, KY, pro se.

Abdul Albari, LaGrange, KY, pro se.

Connie V. Malone, Boyce Andrew Crocker, Office of General Counsel, Corrections Cabinet, Frankfort, KY, for James Dent, Walt Chapleau, Jack Lewis, Theresa Hensley, Gregg W. Anderson, Glenn Haeberlin, Phillip

Parker, Susan N. Williams, Gail McQuigg, Ruth Byrd, Jack C. Lewis, Billy Wellman, Joe Stuart, Patti Webb, Rick Pershing.

Boyce Andrew Crocker, Office of General Counsel, Corrections Cabinet, Frankfort, KY, for The Kentucky Centralized Inmate Commissary, Inc., The Kentucky Canteen, Inc., Robert Komer.

Ronald Timothy Phipps, Eddyville, KY, pro se.

John T. Damron, Office of General Counsel, Corrections Cabinet, Frankfort, KY, for Phillip Parker, Walt Chapleau, Dottie Bacon, Gail McQuigg, Steve Bail, Amos Harris, Tim Fox, J. Foy, Jack Woods, Ron Fletcher, Charles R. Ramsey, Mike Laffoon, Herbert Mayfield.

Troy Berry, Eddyville, KY, pro se.

Connie V. Malone, Office of General Counsel, Corrections Cabinet, Frankfort, KY, for Phillip Parker, Glenn Haeberlin.

Charles Douglas Ingram, Sr., Louisville, KY, pro se.

Tony Harris–Bey, Eddyville, KY, pro se.

Jesse Moore, Manchester, KY, pro se.

Cholly B. Johnson, Eddyville, KY, pro se.

### MEMORANDUM OPINION AND ORDER

JOHNSTONE, Senior District Judge.

This is a prisoner civil rights action filed under 42 U.S.C. § 1983 and the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb–1 (RFRA). Ronald Phipps, plaintiff, moved for a preliminary injunction seeking to (1) compel defendants to provide outdoor exercise for him while he is housed in three cellhouse; (2) compel defendants to provide out of cell exercise for him with protective custody inmates only; and (3) prohibit defendants from cutting his earlocks while the present matter is pending. (Docket Nos. 67 and 68). For the reasons that follow, Phipps' motions for a preliminary injunction as to both exercise issues are denied. His motion for a preliminary injunction as to cutting his earlocks is granted.

A preliminary injunction is an injunction that is issued to protect a plaintiff from irreparable injury and to preserve the court's power to render a meaningful decision after a trial on the merits. Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2947. In *Mason County Medical Association v. Knebel*, the Sixth Circuit set forth four factors which must be considered in determining whether to grant or deny relief. *Mason County Medical Association v. Knebel*, 563 F.2d 256, 261 (6th Cir.1977). They are: (1) whether Phipps has shown a strong or substantial likelihood or probability of success on the merits; (2) whether Phipps has shown irreparable injury; (3) whether the issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing a preliminary injunction. *Id. See* Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2948.

### I. Eighth Amendment Claims

First, Phipps seeks to compel defendants to provide him with outdoor exercise while he is housed in three cellhouse. It is undisputed that inmates housed in three cellhouse are entitled to one hour of out of cell exercise five days per week. They do not receive outdoor exercise. In their response, defendants stated that they have developed a plan to build an outside recreation facility for inmates housed in three cellhouse. They further explained that they have already begun to take bids for materials to build the outdoor recreation site.

A viable Eighth Amendment claim has both an objective and subjective component. *Farmer v. Brennan*, —— U.S. ——, ——, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297–300, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The objective component requires that the pain be serious. *Wilson*, 501 U.S. at 298; 111 S.Ct. at 2324. The subjective component provides the means to establish that the offending, non-penal conduct is necessarily wanton in order to state a violation of the Eighth Amendment. *Wilson*, 501 U.S. at 297, 111 S.Ct. at 2323; *Moore v. Holbrook*, 2

F.3d 697, 700 (6th Cir.1993). For all claims challenging conditions of confinement, the deliberate indifference standard shall apply to determine whether the defendants acted wantonly. *Wilson*, 501 U.S. at 302–03, 111 S.Ct. at 2326. In *Farmer*, the Supreme Court essentially held that an official acts with deliberate indifference if he knows of a substantial risk or serious harm to an inmate's health or safety, yet disregards that risk by failing to take reasonable measures to abate it. *Farmer*, —— U.S. at —— – ——, 114 S.Ct. at 1979–84.

■ Because defendants have already begun to build an outside recreation site for three cellhouse inmates, they are not acting with a deliberate indifference to the inmates' health and safety needs. Rather, they have recognized a need for outdoor exercise and are presently resolving the problem. Phipps has failed to show that defendants are deliberately indifferent to his needs and thus has not satisfied the subjective component of this Eighth Amendment claim. Phipps' motion for a preliminary injunction will be denied as to this issue. At this juncture, the court will not interfere with the development of a safe and secure outdoor recreation facility. *See Walker v. Mintzes*, 771 F.2d 920, 926–28 (6th Cir.1985); *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir.1983).

■ Phipps also seeks to compel defendants to provide exercise to the inmates according to their specific classification i.e. inmates in protective custody exercise only with inmates in protective custody; inmates on death row exercise only with inmates on death row. He claims that when inmates from all of classifications exercise together, it jeopardizes his safety in violation of his Eighth Amendment rights. Defendants did not respond to Phipps' motion as to this claim.

Here, Phipps failed to show that defendants were deliberately indifferent to his safety. *Farmer*, —— U.S. at ——, 114 S.Ct. at 1984. *See Gibson v. Foltz*, 963 F.2d 851, 853–54 (6th Cir.1992); *Marsh v. Arn*, 937 F.2d 1056, 1060–69 (6th Cir.1991). He stated in a conclusory manner that his safety is endangered. However, he did not say that he had been harmed or threatened by anoth-

er inmate. Phipps' motion will be denied as to this claim as well.

## II. First Amendment Claim

Phipps also asks the court to enjoin defendants from cutting his earlocks while this action is pending. Phipps states that he adheres to the tenets of Orthodox Hasidic Judaism which prohibits him from shaving his earlocks. As an Orthodox Hasidic Jew, he contends that his rights under the First Amendment and Religious Freedom Restoration Act, 42 U.S.C. § 2000bb–1 (RFRA) are violated every time defendants cut his earlocks. Defendants did not respond to Phipps' motion as to this claim.

Pursuant to Kentucky State Penitentiary's Institutional Policy 10–02–01, all inmates in segregation are given a haircut of not longer than two inches unless they have a documented medical excuse. Defendants claim that their policy of short haircuts in segregation is necessary: (1) to prevent inmates from hiding contraband in long hair; (2) to promote hygiene standards; and (3) to allow for immediate identification of inmates. It is undisputed that defendants forced Phipps to receive a burr haircut in June 1994.

■ The Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb–1 provides:

(a) **In general.** Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).

(b) **Exception.** Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

(c) **Judicial relief.** A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. Standing to assert

a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution.

This Act applies to prisoners.[1] Congress, by passing RFRA, rejected the less rigorous standard applied in *Employment Division, Dept. of Human Resources of Oregon v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). In *Smith,* the Supreme Court held that a "valid and neutral law of general applicability" will be upheld if it is reasonably related to a legitimate governmental interest, even if the law places an incidental burden on the free exercise of religion. In response to this narrow reading of the First Amendment, Congress enacted RFRA and reinstated the compelling governmental interest test enunciated in *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) and *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). *See* 42 U.S.C. § 2000bb(b)(1).

■ Under RFRA, any substantial restriction on the religious liberties of inmates will fall unless the government can demonstrate that the restriction is in furtherance of a compelling governmental interest, and that the restriction imposed is the least restrictive method of furthering that governmental interest. In other words, RFRA ensures that all claims of free exercise of religion are governed by the compelling interest standard rather than the lower reasonableness standard.

It is significant that at least the Second, Fourth, Eighth, and Tenth Circuits have held that prison regulations requiring inmates to cut their hair or shave their beards, in violation of their respective religious beliefs, violated the inmates' First Amendment rights. *See Longstreth v. Maynard,* 961 F.2d 895, 903 (10th Cir.1992), *cert. denied,* — U.S. ——, 114 S.Ct. 260, 126 L.Ed.2d 212 (1993); *Benjamin v. Coughlin,* 905 F.2d 571, 575–77 (2nd Cir.1990), *cert. denied,* 498 U.S. 951, 111

S.Ct. 372, 112 L.Ed.2d 335 (1990); *Gallahan v. Hollyfield,* 670 F.2d 1345, 1346–47 (4th Cir.1982); and *Teterud v. Burns,* 522 F.2d 357, 362–63 (8th Cir.1975).

The Sixth Circuit, in *Pollock v. Marshall,* 845 F.2d 656, 657–60 (6th Cir.1988), *cert. denied,* 488 U.S. 897, 109 S.Ct. 239, 102 L.Ed.2d 228 (1988), held otherwise. The *Pollock* Court analyzed the claim of the prisoner plaintiff, a Lakota American Indian, under the reasonableness standard, i.e. whether the prison regulation was "'reasonably related to legitimate penological interests.'" *Id.* at 658 (quoting *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987)). However, this lower reasonableness standard has been superseded by RFRA and is no longer applicable to religion claims.

Since RFRA has been in effect, several courts have found that policies forcing inmates to cut their hair, in violation of their religious beliefs, could violate RFRA. *See e.g. Abordo v. State of Hawaii,* 902 F.Supp. 1220, 1229–34 (D.Hawaii 1995); *Helbrans v. Coombe,* 890 F.Supp. 227, 230 (S.D.N.Y. 1995); *Luckette v. Lewis,* 883 F.Supp. 471, 477–83 (D.Ariz.1995); and *Lewis v. Scott,* 910 F.Supp. 282 (E.D.Tex.1995). *But see Phipps v. Parker,* 879 F.Supp. 734, 735–36 (W.D.Ky. 1995);[2] *Diaz v. Collins,* 872 F.Supp. 353, 358–59 (E.D.Tex.1994).

■ The court must first determine whether Phipps has shown that he has a strong or substantial likelihood or probability of success on the merits. Phipps must initially show that his religious beliefs as an Orthodox Hasidic Jew are sincere. He must also establish that the tenets of Orthodox Hasidic Judaism require that he not cut his earlocks. *See Bryant v. Gomez,* 46 F.3d 948, 949–50 (9th Cir.1995); *LaFevers v. Saffle,* 936 F.2d 1117, 1119 (10th Cir.1991). The determination of whether an individual is sincere in his beliefs is a factual one. The

---

1. *See* S.Rep. No. 111, 103rd Cong., 1st Sess. (1993); H.R.Rep. No. 88, 103rd Cong. 1st Sess. 8 (1993), U.S.Code Cong. & Admin.News 1993, p. 1892.

2. In *Phipps v. Parker,* 879 F.Supp. 734 (W.D.Ky. 1995), this district held that defendants' haircut policy at Kentucky State Penitentiary did not

violate Phipps' constitutional rights. The court held that "the safety concerns offered by the defendants to be sufficiently compelling to satisfy the RFRA standard." *Id.* at 736. This difference in the interpretation of RFRA creates an interesting controversy for Sixth Circuit review.

Supreme Court has cautioned that it "is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." *Hernandez v. C.I.R.*, 490 U.S. 680, 699, 109 S.Ct. 2136, 2148, 104 L.Ed.2d 766 (1989).

There is ample evidence in the record demonstrating that Phipps is Jewish, keeps kosher, studies Hebrew, and observes the Jewish holidays. Moreover, Gregg Anderson, the Chaplain at KSP, recognizes that Phipps is Jewish. In an affidavit, Phipps stated that he "is an Orthodox Hasidic Jew, and ever since June of 1988 he has been a baalat teshevah, Hebrew for 'one who has returned.'" Phipps has also submitted a policy statement from Rabbi Sholom D. Lipskar of the Aleph Institute discussing the prohibition against shaving one's earlocks according to Jewish law. Defendants do not question or point to any evidence contradicting the sincerity of Phipps' beliefs. The court will assume for the purpose of this opinion that his religious convictions are authentic and cutting his earlocks substantially burdens his faith.

Because defendants may have substantially burdened Phipps' exercise of religion, defendants must show that their haircut policy is in furtherance of a compelling governmental interest, and that the restriction imposed is the least restrictive method of furthering the governmental interest. 42 U.S.C. § 2000bb–1. The record shows that Phipps was placed in segregation on March 10, 1994. Apparently, defendants waited three months until they cut his hair. Waiting three months to cut Phipps' hair weakens defendants' argument that their governmental interest is compelling. If defendants' security concerns were as compelling as they claim, then they would have cut Phipps' hair as soon as he entered three cellhouse. Further, shaving his earlocks may not be the least restrictive means of furthering their interest. For example, while Phipps' hair is short, defendants could photograph him for security reasons. Finally, Phipps only asks that defendants be prohibited from cutting his earlocks. It would be difficult for Phipps to hide contraband in this small amount of hair and it would not create an undue hardship on defendants to search his earlocks. Defendants' haircut policy seems to violate RFRA and Phipps' First Amendment rights. The first factor of the *Mason County Medical Association v. Knebel* test supports Phipps' position.

Secondly, Phipps must show irreparable injury. Every time defendants cut Phipps' earlocks, they are potentially violating his First Amendment rights. This portion of the *Knebel* test weighs in Phipps' favor as well.

Next, the court must decide whether the issuance of a preliminary injunction would cause substantial harm to others. Here, a preliminary injunction would enjoin defendants from cutting Phipps' earlocks while the present matter is pending. The court is aware that hardships could occur as a result of the injunction. For example, defendants are concerned that Phipps could hide contraband in his hair. However, Phipps' request is limited and the injunction would only apply to him. An injunction such as this would not present a substantial harm to defendants or the community if certain precautions are taken.

Finally, the court must consider whether the public interest would be served by issuing a preliminary injunction. On the one hand, it is in the public interest to protect an individual's right to practice his or her sincere religious beliefs without substantial governmental intrusion. On the other hand, it is in the public interest to allow prison officials much discretion and latitude in managing their institutions without court interference. Defendants state that they can best secure KSP by requiring inmates housed in three cellhouse to receive short haircuts. This factor is neutral.

After considering the factors outlined in *Knebel*, a preliminary injunction is warranted as to Phipps' First Amendment claim. Although reluctant to interfere with the administration of KSP, the court will issue a preliminary injunction enjoining defendants from cutting Phipps' earlocks.

### III. Conclusion

For the reasons stated, IT IS ORDERED:

(1) Phipps' motions for a preliminary injunction as to both exercise issues challenged under the Eighth Amendment are DENIED. (Docket Nos. 67 and 68).

(2) Phipps' motion for a preliminary injunction as to cutting his earlocks is GRANTED. (Docket No. 67).

(3) Prison officials at Kentucky State Penitentiary are enjoined from cutting Phipps' earlocks. This injunction shall remain in effect until this case has been fully adjudicated on its merits.

(4) The parties are notified that the case will be advanced on the docket for trial.