Abdul Hakim Jamal Nasir **SHABAZZ**, a/k/a Owen X. Denson, **Plaintiff-Appellant,**

v.

K.C. **BARNAUSKAS, et al.,** **Defendants-Appellees.**

Abdul Hakim Jamal Nasir **SHABAZZ**, a/k/a Owen X. Denson, **Plaintiff-Appellant,**

v.

R.G. **WILLIAMS, et al.,** **Defendants-Appellees.**

Nos. **84–3803, 85–3042 and 85–3046.**

United States Court of Appeals, Eleventh Circuit.

June 10, 1986.

William J. Sheppard, Jacksonville, Fla., for plaintiff-appellant.

Jason Vail, Asst. Atty. Gen., Tallahassee, Fla., for defendants-appellees in Nos. 84–3803 and 85–3042.

Jason Vail, Harry F. Chiles, Asst. Attys. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for defendants-appellees in No. 85–3046.

Before GODBOLD, Chief Judge, FAY, Circuit Judge, and PECK *, Senior Circuit Judge.

PER CURIAM:

Shabazz is an inmate at Florida State Prison, a maximum security facility, under life sentence. He has been litigating with Florida prison officials since the late 1970's concerning whether he may grow and maintain a beard. In 1979 he filed two § 1983 complaints praying for damages and declaratory and injunctive relief. The complaints alleged that the appellee prison officials had violated his First Amendment right to freely exercise his Islamic faith by forcing him to shave his beard, and, in violation of the Eighth Amendment, had subjected him to cruel and unusual punishment by taking disciplinary action against him despite his having a valid medical excuse from prison shaving regulations. The district court dismissed both claims, and this court vacated and remanded for further proceedings.[1] *Shabazz v. Barnauskas*, 598 F.2d 345 (5th Cir.1979). The ensuing trial, Shabazz says, required three days. The court granted a directed verdict on the Eighth Amendment claim and then, without a jury, entered findings of fact and

---

* Honorable John W. Peck, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

1. The two cases were consolidated on remand.

conclusions of law on the First Amendment claim, and entered judgment for defendants. We affirm.

■ On appeal Shabazz contends that the judgment on his Eighth Amendment claims was based on an erroneous view of the law; that a directed verdict should not have been granted on his Eighth Amendment claims; that his First Amendment claims should have been tried to a jury;[2] and that it was error for the court to permit an assistant attorney general who had failed to file a notice of appearance to appear as substitute counsel for appellees. As to the last of these contentions, whether or not the appearance of substitute counsel deviated from a rule of court it did not rise to the level of a violation of Shabazz's rights. *Cf. Liner v. J.B. Talley & Co.*, 618 F.2d 327, 329 (5th Cir.1980).

### The Eighth Amendment claims

Shabazz says that he was bearded before going to prison, that he was forced to shave upon entering confinement[3] and after a year of shaving developed sensitive skin and other problems. Shabazz asserts that physicians at Florida State Prison diagnosed this condition as "pseudofolliculitis barbae" or "shaving bumps." He says that shaving aggravates this condition by causing bleeding, inflammation, irritation, ingrowing of hairs, infection, purulence and pain. The physicians allegedly issued Shabazz a "permanent non-shaving permit" which would have allowed him to closely clip his beard and mustache with scissors in lieu of shaving. Shabazz states that despite the permit he was disciplined for not shaving and was forced to shave and that his right not to be subjected to cruel and unusual punishment was thereby violated.

The Eighth Amendment embodies "'broad and idealistic concepts of dignity,

civilized standards, humanity, and decency ...'" and registers "'the evolving standards of decency that mark the progress of a maturing society,'" *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976) (attributions omitted). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' ... proscribed by the Eighth Amendment." *Id.* at 105, 97 S.Ct. at 291 (1976) (citation omitted). Even in "less serious cases"— where indifference to medical needs does not "actually produce physical 'torture or a lingering death'"—indifference to medical needs "may result in pain and suffering which no one suggests would serve any penological purpose." *Id.* at 103, 97 S.Ct. at 290. Indifference to medical needs may be manifested "by prison guards ... intentionally interfering with the treatment once prescribed." *Id.* at 104–05, 97 S.Ct. at 291.

■ Accepting as true Shabazz's statements of the facts,[4] the directed verdict on the Eighth Amendment claims was not improper. Even if Shabazz was required to shave when, on instructions from the physician, he should not have been required, the violation does not rise to the level of the cruel and unusual punishment forbidden by the Eighth Amendment. Pretermitting whether there was sufficient evidence of deliberate indifference to submit to the jury, there is not involved the "serious medical need" that must be implicated. *Estelle v. Gamble, supra.*

### The First Amendment claims

The district court, 600 F.Supp. 712, found that Shabazz is a sincere Muslim, that the growing of a beard is "deeply rooted" in Muslim religious tradition, and that the state's no beard rule served a legitimate penological interest in preventing escape. The district court made no specific finding

---

**2.** We decline to reverse on this ground. Shabazz has not filed with this court a transcript of his trial. He asked the trial court for a transcript, and the motion was denied. He made no motion in this court for a transcript and, although we have accepted two briefs from him (a pro se brief followed by appointed counsel's

brief) neither raises as error the failure to furnish a transcript.

**3.** He does not question the validity of this requirement.

**4.** *See* n. 2, *supra.*

whether the no beard rule was the least restrictive alternative available to the state to achieve its legitimate interest. Instead ·it relied upon findings and conclusions entered four months earlier by the same judge in *Griffin v. Duggar,* M.D.Fla., No. 79–758, Sept. 25, 1984, and attached a copy of the opinion in *Griffin,* Appendix 2, 600 F.Supp. at 729. That case concerned the desire of an American Indian imprisoned in the Florida prison system to wear the hair of his head in long braids. The court in *Griffin* had made these significant findings: (1) It is a sincere religious belief of American Indians that they should not cut their hair. (2) The Florida prison regulation forbidding long hair is reasonably related to legitimate penological objectives such as discipline, health and sanitation, and security. (3) No viable less restrictive alternative exists. (4) Examined under either the rational basis standard or the least restrictive means standard, the prison policy concerning haircuts is not an unconstitutional violation of plaintiff's First Amendment right because the regulation facilitates the identification of escaped inmates. This is, the court held, a sufficient reason in itself to sustain the regulation.

Applying *Griffin* to the present case, the court found: (a) the Florida prison system requires all inmates to be clean shaven unless they possess a valid non-shaving permit for a medical reason. (b) The clean shaven policy facilitates the identification of escaped inmates. (c) The evidence is that the no beard rule is for the same purpose as the haircut rule and has facilitated prompt recapture of escapees in the past. (3) The no beard rule, to the extent that it prohibits Shabazz, while at a maximum security prison, from growing a beard in conformity with his religious beliefs, is not violative of the First Amendment.

■ We hold that validity of the no beard rule must be measured under the less restrictive means test. In *Bradbury v. Wainwright,* 718 F.2d 1538 (11th Cir.

1983) this court applied a least restrictive alternative test in a case challenging a prison regulation restricting inmates' right to marry. The *Bradbury* test is two-step:

First, the prison regulation must further a substantial government interest. A regulation will be taken to further such an interest if it is rationally related to it. Second, a regulation's restriction on marriage [a fundamental right] must be no greater than necessary to protect the governmental interest involved. This two-part standard should be applied with a wide-ranging deference to the expert judgment of prison administrators.

718 F.2d at 1543.

We find no principled basis for distinguishing *Bradbury.*[5] Appellees argue that *Bradbury* is inapposite because it dealt with the right of an inmate to marry a non-inmate, and therefore rested on the rights of the non-inmate rather than those of the inmate. Nothing in *Bradbury* supports this. Appellees also contend that *Bradbury* is not in harmony with *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977). In fact, *Bradbury* discusses *Jones* at length and finds *Jones* not hostile to a least restrictive alternative standard in First Amendment cases. See *Bradbury,* 718 F.2d at 1540–43. Appellees also cite *Jean v. Nelson,* 711 F.2d 1455, 1508–09 (11th Cir.1983), *rev'd en banc on other grounds,* 727 F.2d 957 (1984), *aff'd* — U.S. ——, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985), a Haitian detainee case, as support for applying a less stringent "reasonableness" standard to restrictions upon prisoners' fundamental rights. But the "reasonable restrictions" language in *Jean* refers to the First Amendment access claim of the plaintiff Haitian Refugee Center, and thus pertains to time, place and manner restrictions imposed upon outsiders, not upon detainees. Moreover, the *Jean* court directed the district court on remand to make findings regarding "how [the challenged regula-

---

**5.** The *Bradbury* opinion, 718 F.2d at 1543 n. 6, footnotes *Madyun v. Franzen,* 704 F.2d 954, 959 (7th Cir.), *cert. denied,* 464 U.S. 996, 104 S.Ct.

493, 78 L.Ed.2d 687 (1983), a free exercise of religion case applying a somewhat different two-part standard.

tions] compare with other access regulations for detention facilities." *Id.* at 1508 n. 61, suggesting a concern with alternatives.

Shabazz contends that it must be assumed that the district court, in error, applied the rational basis test. In its opinion and findings the district court referred to *Griffin* (in which four months earlier it had applied both the rational basis test and least restrictive means test and had found both satisfied), and attached the *Griffin* opinion. It described the penological interest present in *Griffin* (identification of escaped inmates) and noted *Griffin*'s holding that the no long hair rule was valid. Then it linked *Griffin* to the present case by holding that the no beard rule has the same purpose as the no long hair rule (facilitating prompt recapture of escapees). Then the court concluded that the no beard regulation, as applied to Shabazz in a maximum security prison, does not violate the First Amendment.

The district court did not specifically restate that it was applying in this case the same alternative standards it had just described a few lines earlier, but it would fly in the face of common sense to say, after the court relied on *Griffin*, laid the present case and *Griffin* one over the other and found them congruent, that it would apply only one of the two alternative standards it had just described a few lines earlier.

Shabazz urges that because the prison has a color photograph of him without a beard and can take a picture of him with a beard, should he escape he can be identified by the photograph that matches his escapee appearance. This is not a basis for reversal. This court is not able to say that preparation, storage, maintenance, and dissemination to the world of law enforcement agencies (and other sources) two photographs to be used to recapture an escapee is a feasible means of furthering the state's interest in identification. We cannot say that it works as well to present a potential source of identification with two pictures. Moreover, the argument overlooks that a beard is not static. A photo-

graph of a prisoner with a beard may soon be out of date. A beard can grow longer, be cut shorter, be trimmed or altered, and even the color of it changed.

AFFIRMED.