John L. PIERCE, AIS# 164830,
Plaintiff,

v.

Chaplain Stephen SMITH,
et al., Defendants.

Civil Action No. 02–M–1349–N.

United States District Court,
M.D. Alabama,
Northern Division.

March 22, 2004.

John L. Pierce, Elmore, AL, pro se.

Andrew W. Redd, Montgomery, AL, for Defendants.

## MEMORANDUM OPINION

McPHERSON, United States Magistrate Judge.

On 10 September, 2002, John Pierce ["Pierce"], an Alabama inmate, filed this civil lawsuit pursuant to 42 U.S.C. § 1983 ["Section 1983"][1] and the First Amendment to the United States Constitution (Doc. # 1, Complaint). He alleges that his religious rights have been violated during his incarceration at the Staton Correctional Facility ["Staton"]. The named defendants in this case are Staton Chaplain Steven Smith ["Chaplain Smith"], Staton Warden Willie Thomas ["Warden Thomas"], Assistant Warden Leon Forniss ["Warden Forniss"], Captain Robert Sanford, Captain George Edwards, Lieutenant Edward Robinson, and DOC Commissioner Michael Haley ["Haley"] [collectively referred to as "the defendants"]. Pierce

---

1. Section 1983 provides

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable . . .

has sued the defendants in their individual and official capacities.

This case is presently before the court on the defendants' Special Report, filed on 6 March 2003 (Doc. # 9), which the court now construes as a motion for summary judgment (Doc. # 9). Pierce alleges that the defendants have violated his constitutional rights to the free exercise of religion, guaranteed by the First Amendment, and his rights to be free from discriminatory treatment under the Equal Protection Clause of the Fourteenth Amendment (Doc. # 1, Complaint). The parties consented to disposition of this case by a Magistrate Judge on 20 March 2003 (Doc. # 13). For the reasons set forth herein, the defendants' motion for summary judgment is GRANTED.

## I. FACTS AND PROCEDURAL HISTORY

On 2 February 1999, Commissioner Haley issued a memorandum to all prison wardens and chaplains, entitled "The Department's Recognition of Religious Beliefs and Practices of Committed Offenders" (Plaintiff's Exhibit 1, attached to Document # 1, Complaint). The memorandum stated, in pertinent part,

I have enclosed an updated version of Religious Beliefs and Practices resulting from a joint stipulation between the ADOC and the United States District Court regarding Native American Spirituality. The revisions made have been drawn verbatim from the court document . . .

The attached addendum provided:

1. Purpose: To establish minimum requirements for offenders to worship their declared faith and to identify activities and practices most commonly approved.

2. Approved Procedure for bringing in food by free-world sponsors for religious celebrations:

Regarding religious celebrations where food is required, an "approved sponsor(s)" will be responsible for submitting a dinner menu to the Chaplain at least 20 days prior to the date of the celebration, so it can be reviewed by the Warden. In those cases where a suitable sponsor cannot be found, inmates will be fed from the regular dinner menu.

The following religious celebrations have been given permission to have food brought in by free-world sponsor(s):

a. Kairos Events . . .

b. Ramadhan Eid Feast . . .

c. The End of December Fast Celebration . . .

d. *Harvest Moon Festival* . . .

e. Jewish Passover . . .

f. *For smaller religious sects like the* Muslims and the *Native Americans,* among others, *where free world sponsors may be limited, inmates may draw from their PMOD accounts for their "approved sponsors" to purchase food.* If sponsors cannot be found to help facilitate the feast or festival, the group will be fed from the regular menu and have access to the dining hall after the rest of the population has eaten.

(Emphasis added) (Plaintiff's Exhibit 1, p. 3, DOC Program Services Administrative Memorandum Addendum).

The "joint stipulation" referenced by Commissioner Haley is in fact an agreement that regulates Native American religious practices and customs in Alabama's penal facilities, including the possession and regulation of decor on, and contents in, medicine bags; vegetation for ceremo-

nial grounds; as well as location, access, and size of medicine bags; the wearing and/or possession of feathers, moccasins, prayer pipes, herbs, drums and rattles; the purchase and publication of literature; ceremonial days; purchase of varied items; the training of correctional officers; and inspection procedures. The stipulation expressly states that the parties were not able to reach an agreement related to the usage and maintenance of the sweat lodge or Native American hair length. Although the agreement addressed the circumstances under which food items could be purchased by approved sponsors, it did not address or describe acceptable methods of circumstances of preparation of the specific food items.

After the issuance of Commissioner Haley's memorandum, Chaplain Smith issued a memorandum to "All Religious Communities" at Staton regarding "Food Brought In by Free–World Sponsor(s) on 27 February 2001. The memo stated, in pertinent part:

> This is to inform you th[at in t]he Memorandum dated on February 2, 1999 concerning the Update Version of Religious Beliefs and Practices, the below named holidays and events will be the only time that Free–Will Sponsors or Family Members will be able to bring food into the institution ..." (Plaintiff's Exhibit 2, as attached to Doc. # 1).

Seven different religious events, each for different religious groups (including the Native American Prisoners of Alabama ("NAPOA") Harvest Moon Celebration) were listed.

NAPOA requested to observe its Harvest Moon Celebration on Sunday, 6 October 2002. Pierce is a member of the NAPOA, and the celebration was permitted. However, the preparation of food for the Harvest Moon Celebration was effectively limited by another memorandum from Chaplain Smith, issued on 11 September 2002.

> The Native American members at Staton are aware of the procedure of food coming into the institution for their Harvest Moon Festival on Sunday, October 6, 2002. All food must come from a Deli, Restaurant, Fast Food Services ... BBQ places, Winn Dixie, Bakeries, etc. that all food coming in must have a receipt showing where it was purchased, that all condiments must be factory sealed with a receipt.

> It has been understood that no food items will leave the designated area except one sample tray that will be buried on the ceremonial grounds, which is part of their ritual ceremonial.

(Doc. # 9, p. 20).

Notwithstanding Pierce's contrary allegations (See Doc. # 1, p. 3), Chaplain Smith issued a nearly identical memorandum to the Sunni Muslims regarding their Eid Feast and to the Nation of Islam regarding its Eid Feast on 2 December 2002 (Doc. # 9, pp. 23–24).[2] On the same day that the memoranda issued to the Sunni Muslims and the Nation of Islam, Pierce filed this suit.

Pierce challenges the latter memorandum and alleges that it "effectively destroyed the Harvest Moon Celebration as there are traditional foods which are eaten at the celebration" (Doc. # 1, p. 3). In consideration thereof, and in light of the previous stipulated settlement agreement in the consolidated actions of *Limbaugh v. Thompson* and *NAPOA v. State of Alabama Dept. of Corrections*, Case no. 93–D–1404–N (M.D.Ala.1998), the issue for

---

**2.** Of course, the memoranda included varying dates and times for the different feasts/programs. Otherwise, however, the text of each was identical.

disposition in the instant matter is whether the provision in Chaplain Smith's memorandum which limits the origins of food provided by "free-world sponsors" violated the settlement agreement. Pierce broadly alleges several civil rights claims, including the following:

1. Chaplain Smith, as a result of his insensitivity and ignorance of NAPOA religious culture, ruined the Native American's Harvest Moon Celebration by imposing certain uniform restrictions on food from free-world sponsors;

2. Chaplain Smith treats Faith Dorm Residents better than members of other religious groups;

3. Chaplain Smith engaged in discriminatory employment practices when staffing the chapel with all black employees;

4. Chaplain Smith made discriminatory remarks against the NAPOA;

5. Chaplain Smith is not qualified for the position he holds due to a lack of the requisite educational and diversity skills training to be chaplain; and

6. All defendants listed in this complaint other than Chaplain Smith either knew or should have known that violations of the plaintiff's freedom of the exercise of religion and equal protection violations were taking place at Staton. As a result, the defendants were required to act under the law, but did not.

As relief in this case, Pierce asks the court for (1) an award of compensatory damages "in excess of $100,000.00", (2) an award of punitive damages "in excess of $250,000.00", (c) nominal damages, (4) injunctive relief "that Chaplain Smith be removed as the Chaplain at Staton", (5) court costs and attorney fees, and (6) any other relief "the court deems just and equitable".

The defendants (1) raise the affirmative defenses of qualified and sovereign immunity; (2) contend that Chaplain Smith's lack of marriage counseling training and/or possession of a college degree do not disqualify him from employment as the Staton Chaplain; (3) assert that "mere derogatory language directed at an inmate does not ... rise to the level of a constitutional violation;" (4) refute the claim that Chaplain Smith has discriminated on the basis of race, only hiring black chapel workers; and (5) argue that Pierce fails to state a claim upon which relief can be granted.

The defendants filed their Motion for Summary Judgment on 6 March 2003 (Doc. # 9), and on 12 March 2003, the court specifically directed Pierce to respond in a manner designed to facilitate the court's consideration of the Special Report as a motion for summary judgment (Doc. # 11). Significantly, Pierce's response to the motion, filed on 31 March 2003, was a statement or argument that was not sworn to or notarized (Doc. # 14). He submitted no affidavits or supporting evidentiary materials. Thus, critical to the court's granting of the motion for summary judgment is the fact that Pierce's only rebuttal was written argument. Therefore, the allegations made by the defendants in their affidavits and other evidentiary materials are not undisputed, for purposes of Rule 56, *F.R.Civ.Pro.*

## II. STANDARD OF REVIEW

Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law". *Fed.R.Civ.P. 56(c).* On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in

the light most favorable to the nonmoving party.[3] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.1996).

In responding to a motion for summary judgment,

> The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548, 91 L.Ed.2d 265. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265.

*Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir.1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 322–23, 106 S.Ct. 2548). Thus, consideration of a summary judgment motion does not lessen the burden on the nonmoving party, i.e., the nonmoving party still bears the burden of coming forth with sufficient evidence on each element that must be proved.[4] *Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990); see *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

■ When a defendant files a motion for summary judgment against a *pro se* plaintiff, such as in the instant matter, the *pro se* plaintiff should not be held "to strict accountability of compliance with the rules of procedure." *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir.1997). *See Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). Furthermore, the plaintiff's complaint should be construed more leniently than formal pleadings drafted by attorneys. *Id.* Notwithstanding a more liberal construction, however, the *pro se* plaintiff's complaint must meet the minimum requirements of presenting a viable claim.

### III. ISSUES

The issues presented for resolution in this case are as follows:

1. Is an inmate's constitutional or statutory right to the free exercise of religion violated by a policy, albeit

---

3. The Supreme Court explained that:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

> *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citations omitted).

4. "[I]f on any part of the prima facie case there would be insufficient evidence to re-quire submission of the case to a jury, ... [the court must] grant of summary judgment [for the defendant]." *Earley*, 907 F.2d at 1080 (citations omitted). In *Earley*, the Court of Appeals further emphasized:

> "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

> * * * * * *

> If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted) (emphasis added); **accord** *Hudson v. Southern Ductile Casting Corp.*, 849 F.2d 1372, 1376 (11th Cir.1988).

> *Earley*, 907 F.2d at 1080–81.

neutral on its face, which has the effect of prohibiting preparation of food consistent with the group's religious culture, when the origin of the food is outside the institution and it is contributed by free-world sponsors?

2. Is the policy implemented by Chaplain Smith, which limits the above-described food for the NAPOA's Harvest Moon Celebration to commercially prepared foodstuffs, an unnecessary infringement on Pierce's constitutional or statutory right to the free exercise of his religious beliefs?

Pierce's other claims are ancillary to these claims.

## IV. DISCUSSION

### A. Ancillary Claims

Pierce's ancillary claims are that (1) Chaplain Smith engaged in discriminatory employment practices when staffing the chapel with all black employees, (2) Chaplain Smith treats Faith Dorm Residents better than members of other religious groups; (3)Chaplain Smith made discriminatory remarks against the NAPOA; (4) Chaplain Smith is not qualified for the position he holds due to a lack of the requisite educational and diversity skills training to be chaplain, and (5) Chaplain Smith is not qualified for his position and should be removed.

 The court concludes that the defendants are entitled to summary judgment on the ancillary claims for two reasons. First, Pierce lacks the requisite standing to present them to the court on behalf the NAPOA. Pierce is not an employee of the DOC, and he did not compete with Chaplain Smith for his position. Thus, the DOC's selection of Chaplain Smith did not deprive Pierce of any employment rights. In any case, Pierce has not invoked any employment laws, and this court lacks jurisdiction in this case to decide any party's employment rights.

"The essence of the standing inquiry is whether the parties seeking to invoke the court's jurisdiction have alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Larson v. Valente*, 456 U.S. 228, 238–239, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982) citing *Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 72, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978) quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). "This requirement of a personal stake must consist of a distinct and palpable injury to the plaintiff, and a fairly traceable causal connection between the claimed injury and the challenged conduct." *Id.* at 239, 82 S.Ct. 691 citing *Duke Power Co., supra*, at 72, 98 S.Ct. 2620 quoting *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 261, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

 Pierce's complaint and his subsequent response to the defendants' special report are attempts to state individual claims as well as claims on behalf of the NAPOA as an organization. NAPOA is not a party to this action, however; thus, the court lacks jurisdiction to determine its rights in this litigation. Pierce is neither an attorney-in-fact to the NAPOA, nor is he a class representative.[5] Thus he does not have the right to pursue the organizational rights of the NAPOA or the rights of its individual members.

---

5. The court notes that this is not a class action lawsuit.

For these reasons, the motion for summary judgment as to Pierce's claims articulated in items numbered 1 through 5 above is GRANTED. Specifically, to the extent that Pierce asserts First Amendment claims or any other claims on behalf of NAPOA or on behalf of other inmates, and to the extent that he challenges Chaplain Smith's employment, the motion for summary judgment is GRANTED.

## B. Claims Against Warden Thomas, Capt. Sanford, Capt. Edwards, Lt. Robinson, and Commissioner Haley

Pierce has sued all of the defendants except Chaplain Smith pursuant to the doctrine of *respondeat superior.* He alleges that violations of his constitutional rights may be imputed to all defendants other than Chaplain Smith under the doctrine of *respondeat superior.* Indeed, the sum total of Pierce's allegations in his complaint against the other defendants is that "[t]he other defendants has just ignored this serious complaints and not tried to correct the religious discrimination by Chaplain Smith". Thus, Pierce does not attribute to them any direct action or personal involvement in the promulgation or implementation of the memorandum. His claims against them are therefore meritless, and summary judgment is due to be granted on those claims on the ground that the principle of *respondeat superior* is inapplicable here.

■ Liability may not be imposed on the basis of vicarious liability or the doctrine of *respondeat superior* in a 42 U.S.C. § 1983 claim. *Farrow v. West,* 320 F.3d 1235, 1238 (11th Cir.2003); *Harris v. Ostrout,* 65 F.3d 912, 917 (11th Cir.1995); *Edwards v. Questcare, Inc.,* 1996 U.S. Dist.

LEXIS 12752, 4 (S.D.Ala.1996); and *Robinson v. Myers,* 1990 U.S. Dist. LEXIS 9231, 25 (S.D.Ala.1990). Therefore, an individual defendant cannot be held liable under § 1983 on the theory of *respondeat superior* or on the basis of vicarious liability. *Belcher v. City of Foley,* 30 F.3d 1390, 1396 (11th Cir.1994); *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir.1990); *Zatler v. Wainwright,* 802 F.2d 397, 401 (11th Cir. 1986).

Accordingly, the claims against Warden Thomas, Warden Forniss, Captain Sanford, Captain Edwards, Lieutenant Robinson, and Commissioner Haley are frivolous as they are "based on an indisputably meritless legal theory." *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Such claims are therefore due to be dismissed pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i). Summary judgment is granted to those named defendants, and all of Pierce's claims against them are dismissed.

## C. Claims Against Chaplain Smith in His Official Capacity

Pierce stated that all of his claims are asserted against all of the defendants in their official and individual capacities (Doc. # 1). In response, Chaplain Smith raised the affirmative defense of sovereign immunity, and the court finds that the defense is a bar against the official capacity claims.

■ Lawsuits against an state official in his or her official capacity are in fact suits against the entity that the individual represents. *Gay v. City of Daleville,* 953 F.Supp. 1315, 1322 (M.D.Ala.1996).[6] Chaplain Stevens is an employee of the

---

**6.** State officials "acting in their official capacities" are outside the class of "persons" subject to liability under Section 1983. *Will v. Michigan,* 491 U.S. 58, 71, 109 S.Ct. 2304,

105 L.Ed.2d 45 (1989). In *Will,* the Supreme Court stated:

 Obviously, state officials literally are persons. But a suit against a state official in

Alabama DOC and therefore, to the extent that he is sued in his official capacity, he is a surrogate defendant for the State of Alabama.

Because the State of Alabama, not Chaplain Smith, is the real, substantial party in interest, Pierce is actually requesting damages on his official capacity claims that will potentially be generated from revenue of the State of Alabama. In that connection, the Supreme Court has declared:

> The general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' . . . .

*Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963) citing *Land v. Dollar,* 330 U.S. 731, 738, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947).

■ Sovereign immunity, conferred by the Eleventh Amendment to the Constitution,[7] thus insulates the state from recovery of damages. Accordingly, Chaplain Smith is entitled to summary judgment on Pierce's claims for damages against the chaplain in his official capacity. Those claims should be dismissed.[8]

### D. Claims Against Chaplain Smith In His Individual Capacity

#### 1. The Qualified Immunity *Defense*

In response to Pierce's individual claims against Chaplain Smith, the defendant asserts the defense of qualified immunity. *See Stanley v. City of Dalton,* 219 F.3d 1280, 1285 (11th Cir.2000). "Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Lassiter v. Alabama A & M University, Bd. of Trustees,* 28 F.3d 1146, 1149 (11th Cir.1994).

Indisputably, Chaplain Smith acted within his discretionary authority when he issued the memorandum on 27 February 2001 restricting the sources of food brought to Staton from outside the facility. The court's analysis, then, must examine and determine whether the chaplain violated the contours of clearly established law when he did so. See *Gonzalez v. Lee County Hous. Auth.,* 161 F.3d 1290, 1295 (11th Cir.1998); *Harbert Int'l. Inc. v. James,* 157 F.3d 1271, 1281 (11th Cir. 1998).

> For the law to be clearly established, the law "must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defen-

---

his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). As such, it is no different from a suit against the state itself. *Will v. Michigan,* 491 U.S. at 70, 109 S.Ct. 2304.

7. The Eleventh Amendment provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted

against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
U.S.C. Const. amend. XI.

8. The court has fully analyzed the defendant's Eleventh Amendment defense. Pierce, however, did not analyze the defense in his unsworn response. His only retort was a conclusory declaration that "[t]he Eleventh Amendment does not bar suit's against individual officials or prison employee's". (Doc. # 14).

dant's place, that 'what he is doing' violates federal law."

*Lassiter v. Alabama A & M Univ. Bd. of Trustees,* 28 F.3d at 1149, quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The court finds such a conclusion impossible under the stated circumstances.

The Supreme Court has held that a "necessary concomitant" to the question of whether a plaintiff has alleged a violation of a clearly established federal right is "the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *GJR Invs., Inc. v. County of Escambia,* 132 F.3d 1359, 1367 (11th Cir. 1998); *Cottrell v. Caldwell,* 85 F.3d 1480, 1485 (11th Cir.1996). If the plaintiff has not asserted a constitutional right, the qualified immunity analysis ends.[9]

If the court determines, however, that a constitutional right has been asserted, the court must proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 1697, 143 L.Ed.2d 818 (1999) (quoting *Conn v. Gabbert,* 526 U.S. 286, 289, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999)). Undeniably, Pierce has a fundamental right to free exercise of his religion. However, that right must be balanced against penological interests.

> For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what de-

fendant is doing violates federal law in the circumstances.

*Jenkins by Hall v. Talladega City Bd. of Educ.,* 115 F.3d 821, 823 (11th Cir.1997) (en banc) (quoting *Lassiter,* 28 F.3d at 1150), *cert. denied,* 522 U.S. 966, 118 S.Ct. 412, 139 L.Ed.2d 315 (1997).

Again, Pierce's response to the defendant's argument was conclusory. Although he argued that the qualified immunity is not applicable when defendants "know or have knowledge or should have known that they were violating plaintiff's rights", he cited no instances or case law authority in support of his specific claim. In other words, Pierce failed to proffer any court decision or other legal authority that forbids, makes unlawful, or even discusses restrictions upon foods brought to a penal institution from outside. The court's analysis, therefore, is limited to the defendant's legal argument.

### 2. Application of Qualified Immunity

The gravamen of Pierce's complaint is that his constitutionally guaranteed right to enjoy freedom of religion was inhibited by Chaplain Smith's decision that "the bringing of food in for religious events by free-world sponsors" ... "now had to come [from] a fast food restaurant and factory sealed with a receipt" (Doc. # 1, p. 3, paras. 12–13, citing language from Chaplain Stevens' 10 September 2002 memorandum).

For the sake of this analysis, the court assumes that the restriction impedes Pierce's free exercise of his religion. The need for that assumption is founded upon the court's reiteration of Pierce's failure to proffer evidence of the detailed requirement of home-made foods to celebrate the

---

**9.** "If a plaintiff has not sufficiently alleged a violation of any constitutional right, it is axiomatic that the plaintiff likewise has failed to allege the violation of a 'clearly established' right." *GJR Investments, Inc. v. County of Escambia, Florida,* 132 F.3d 1359, 1367 (11th Cir.1998).

Harvest Moon Festival. Pierce has merely asserted conclusory allegations and made conclusory arguments. He has not submitted affidavits on his own, from other practitioners of his faith, or from any minister, teacher or leader of his faith. Nor has he submitted any writing which sets forth an undeniable policy or procedure for receiving, consuming, or otherwise using food stuffs from outside a prison.

The court is mindful that it was not necessary—or should not have been necessary—for Pierce to secure discovery of the aforementioned evidence from the defendants. After all, it is the practice of his own religion that he seeks to protect; thus, presumably, he is already knowledgeable of the principles that establish appropriate conduct, and he is already in possession of writings that affirm those principles. He has not submitted a sworn statement setting forth those principles, however, leaving the court with no traditionally acceptable evidentiary basis upon which to proceed.

However, in an *extreme* interpretation of the Court of Appeals' directive that *pro se* plaintiffs be immunized from "strict accountability", and because of the priority accorded First Amendment claims in general—and free exercise claims in particular—in constitutional jurisprudence, this court has overlooked the minimum requirements of Rule 56 to determine the issue of qualified immunity in this case. Full candor also compels the court to note that, although the defendants asserted the defense of qualified immunity, their allegation was no less conclusory than the plaintiff's. Indeed, the defendants cited no case law whatsoever in the document which seeks summary judgment (See Doc. # 9).

### a. The Stipulated Agreement

In applying the principles of qualified immunity to the instant case, the court must consider the stipulated settlement agreement and whether Chaplain Smith, when issuing his memorandum, violated any policies or procedures outlined therein.[10] Pertinent to that consideration are paragraphs 16 and 18 of the agreement; they set forth provisions related to—and perhaps precedent to—Chaplain Smith's purported regulation of the Harvest Moon Festival, particularly, the restriction imposed on food provided by free world sponsors. The paragraphs state, in pertinent part,

16. ***The DOC shall permit inmates to celebrate*** the following sacred days: the Green Corn Ceremony; ***the Harvest Moon Ceremony;*** the winter and summer solstices, and the spring and fall equinoxes. The DOC shall require Native American inmates to notify the chaplain or warden or the warden's designee twenty days prior to the observance of sacred days. The DOC may impose the same work proscriptions on Native American sacred days as work proscriptions observed by the Department for the recognized sacred days of other religions.

\* \* \*

18. ***The DOC shall impose no proscriptions on ordering religious items by the Native American inmates, provided such items do not constitute a legitimate threat to security.*** Such items shall be obtained through the channels and

---

**10.** In so doing, of course, the court presumes and finds that the terms of the stipulated agreement, as they pertain to the issues presented in this case, are constitutionally sound. Notably, Pierce has not challenged those terms.

procedures set forth in the applicable regulations compatible with this provision.

(*Limbaugh* stipulation, pp. 7–8) (Emphasis added).

The plain language of paragraph 18 states that "[t]he DOC shall impose no proscriptions on ordering religious items by Native American inmates" subject to one explicit exception: when the ordering of these religious items pose a "legitimate threat to security." The court construes "food stuffs," such as those associated with the Harvest Moon Festival, as mentioned in paragraph 16, to be covered in the above regulation.

### b. The Parties' Positions

An individual's free exercise of religion is a fundamental right protected under federal statute and the United States Constitution. However, conduct in furtherance of this right is subject to regulation. Courts are charged with the duty of balancing the severity of the burden on one's free exercise of religion with the government's interest in the regulation, when evaluating the extent to which conduct should be curtailed.

The court acknowledges a seemingly shifting paradigm resulting from judicial scrutiny applied to evolving laws on the matter of free exercise claims under the First Amendment filed by prisoners.[11] However, whether an inmate is entitled to "home-made" food from outside the institution, instead of commercially produced food from outside the institution, is a matter of first impression for the Eleventh Circuit.

The justifications for the challenged restriction, as presented by the defendants, is somewhat sparse, but consistent:

- In his affidavit, Chaplain Smith stated that his memorandum was "required for the safety and health of inmates who will consume the food." (Doc. # 9).

- Warden Thomas indicated in his affidavit that he "agreed to this and approved the request", but he did not further elaborate on the basis for the restriction (Affidavit of Warden Willie Thomas, Doc. # 9).

- Warden Forniss stated that [h]ome prepared food to be brought in by sponsors has been discontinued for all functions for the health and safety of the inmates and sponsors who will consume the food (Affidavit of Leon Forniss, Doc. # 9).

The other defendants make no comment in their affidavits on the reason for the restriction.

Chaplain Smith's challenged memorandum is not helpful either. It does not identify a reason for the restriction. On the other hand, the listing of "Traditional Menus" submitted by Pierce and the NAPOA merely identifies foods (such as "cabbage", "corn", "goose", "deer", "apple", etc.) without stating any particularized means of preparation (See Doc. # 9).

### c. Legitimate Penological Interest

■ As a matter of law, where a prison's practice or policy is reasonably related to a legitimate penological interest, the policy will be upheld as a valid restriction

---

**11.** The Free Exercise Clause "withdraws from legislative power, state and federal, the exertion of any restraint on the free exercise of religion. Its purpose is to secure religious liberty in the individual by prohibiting any invasions thereof by civil authority." *Jimmy*

*Swaggart Ministries v. Bd. of Equalization of Cal.,* 493 U.S. 378, 384, 110 S.Ct. 688, 107 L.Ed.2d 796 (1990) *(citing Sch. Dist. of Abington Township v. Schempp,* 374 U.S. 203, 222–223, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963)).

on an inmate's constitutional rights. *Solomon v. Zant,* 888 F.2d 1579, 1581 (11th Cir.1989). Moreover,

> [i]n determining the reasonableness issue, the following relevant factors are generally considered: (a) whether a valid rational connection exists between the policy and the legitimate government interest; (b) whether an alternative means of exercising the constitutional right is available to the prisoner in spite of the policy; (c) whether, and the extent to which, accommodation of the asserted right will have an impact on other inmates, prison staff, or other prison resources in general; and (d) whether the regulation represents an "exaggerated response" to prison concerns.

*Id.* at 1581 citing *Turner v. Safley,* 482 U.S. 78, 88–91, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

Before *Turner* and *Solomon,* however, the appellate courts wrestled with prisoners' claims of impingement on their free exercise of religion in cases involving food. However, even in this closely scrutinized context, the court found that legitimate governmental interests should prevail.

> The [government] must strongly show some substantial and controlling interest which requires the subordination or limitation of these important constitutional rights, and which justifies their infringement, (citing numerous cases) and in the absence of such compelling justification the [government] restrictions are impermissible infringements of these fundamental and preferred rights. (Citing numerous cases).

*Walker v. Blackwell,* 411 F.2d 23, 24 (5th Cir.1969).[12] 400 F.2d at 541 n. 1.

In *Walker,* Muslim inmates sought to force officials at the Atlanta Federal Penitentiary to purchase specific items for preparation of meals during Ramadan, and thy sought permission to eat the meals after sundown. Following the trial court's denial of their request, the plaintiffs appealed to the Fifth Circuit, which affirmed:

> It is our opinion that considerations of security and administrative expense outweigh whatever constitutional deprivation petitioners may claim. In this regard, the court holds that the government has demonstrated a substantial and compelling interest, that of security, which compels the deprivation of these after-sunset meals during the month of December (Ramadan). In addition, the added expense of purchasing and preparing this special food, in the light of the present ability of the Muslims to sustain themselves without eating essence of swine, is another substantial reason for placing these minor restrictions on the practice of the faith of Islam at the penitentiary.

411 F.2d at 26.

■ Under the *Turner* analysis, and relying upon *Walker* as precedent, there is a valid, rational connection between the Chaplain Smith's policy, articulated in his memorandum and regulating the import of food from the free world, and a legitimate government interest: namely the health and safety of prisoners. Courts have been solicitous of prisoners' need for basic necessities, but wary of mandating that prison officials respond to every inmate's request.

> If the State furnishes its prisoners with reasonably adequate food, clothing, shelter, sanitation, medical care, and personal safety, so as to avoid the imposition of

---

12. In *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

cruel and unusual punishment, that ends its obligations under Amendment Eight. The Constitution does not require that prisoners, as individuals or as a group, be provided with any and every amenity which some person may think is needed to avoid mental, physical, and emotional deterioration.

*Newman v. State of Alabama*, 559 F.2d 283, 291 (5th Cir.1977)

For their own protection and the protection of other inmates, officers at Alabama penal institutions must exercise extreme caution in permitting items to be brought inside the institutions from outside. Contraband, weapons, and other inappropriate items can be hidden in foods, or the foods themselves may be contaminated with foreign material, including drugs or alcohol.

Moreover, prisons and prison officials are liable for the health and safety of all inmates, and in the event that contaminated food enters the institution which causes illness or an unexpected physical reaction, it would be eminently simpler to trace the origin of the foreign substance by reference to an authorized vendor than by a survey of private individuals.

The plaintiff is reminded that Chaplain Smith's memorandum provides an alternative. He welcomes the Native American inmates to partake in the food provided by the facility, as they usually do, in association with their observance. Furthermore, because this is a restriction that was imposed on all inmate religious groups, the food checks that guards would have to perform would impose an undue burden on employees, increase the cost of management and create a substantial and unavoidable risk of tampering with food regarded as sacred or holy, thereby leading to other complaints.

In consideration of these factors, the Chaplain's regulation does not represent an "exaggerated response" to prison concerns, but rather, a reasonable one. A survey of Eleventh Circuit cases and cases from other circuits has not disclosed any precedent which supports the conclusion that the law was "clearly established" to the point that it should have been obvious to Chaplain Smith that his restriction violated Pierce's constitutional rights.

For the reasons set forth herein, Pierce's claims against the Chaplain are therefore barred by the doctrine of qualified immunity and are due to be denied.

## V. CONCLUSION

For the reasons stated herein, it is ORDERED as follows:

1. The motion for summary judgment on Pierce's claims against Chaplain Smith, Warden Thomas, Warden Forniss, Captain Sanford, Captain Edwards, Lieutenant Robinson, and Commissioner Haley, in their official capacities, is GRANTED, and those claims are hereby DISMISSED with prejudice.

2. The motion for summary judgment on Pierce's claims against Warden Thomas, Warden Forniss, Captain Sanford, Captain Edwards, Lieutenant Robinson, and Commissioner Haley, in their individual capacities, is GRANTED on the ground that the doctrine of respondeat superior is inapplicable to those defendants. Those claims are hereby DISMISSED with prejudice.

3. The motion for summary judgment on Pierce's claims against Chaplain Smith, in his individual capacity, is GRANTED on the ground that the defendant is entitled to qualified immunity, and on the ground that the challenged restriction was a reasonable one justified by a compelling penological interest. Accordingly,

those claims are hereby DIS-MISSED with prejudice.

## FINAL JUDGMENT

Upon consideration of the Memorandum Opinion entered in this case on this date, it is

ORDERED and ADJUDGED that judgment be and is hereby entered in favor of the defendants and against the plaintiff as a matter of law.